## Frank Salter v. Edward Hines Lumber Co.

1. Contracts—*Merger of Prior and Contemporaneous Parol Agreements.*—The rule that when the agreement of parties is evidenced by a written instrument signed by them, all prior and contemporaneous parol agreements are deemed merged in the written instrument, and, therefore, evidence of such parol agreements is inadmissible, relates solely to parol agreements between the parties to the written instrument, and not to declarations made by one of the parties to a stranger to the instrument.

2. Partnerships—*Liability of Incoming Partner.*—A new partner coming into an existing firm, will not be liable for debts contracted by the firm previously to his entering it, unless he expressly assumes them.

3. Same—*Liability of Incoming Partner—When Inferred.*—A special promise to assume liability may be inferred from the conduct of an incoming partner.

Assumpsit.—Trial in the Superior Court of Cook County, on appeal from a justice of the peace; the Hon. ARTHUR· H. CHETLAIN, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the October term, 1897. Affirmed. Opinion filed June 13, 1898.

EDWARD MAHER and CHAS. C. GILBERT, attorneys for appellant.

GRAHAM H. HARRIS, attorney for appellee.·

MR. PRESIDING JUSTICE ADAMS delivered the opinion· of the court.·

This is an appeal from a judgment of the Superior Court of Cook County, for the sum of $100, in favor of appellee and against appellant, on appeal from a judgment rendered by a justice of the peace. The suit was originally commenced against appellant, Salter, Arthur J. Cox and F. W. Meckes, but was dismissed in the justice court as to Meckes and Cox, and judgment was rendered in that court against appellant only.

Between the times of the trial in the justice's court and the trial in the Superior Court Meckes died. Cox and Meckes had been partners in the planing-mill business prior to October 12, 1894, under the firm mame of Cox & Meckes, when Cox sold his interest in the business to Meckes and withdrew from the· firm. Prior to the dissolution of the partnership, and about August, 1894, appellee sold to Cox· & Meckes a bill of lumber amounting to $224, which was unpaid at the date of the dissolution of the firm. Meckes; after the dissolution of his partnership with Cox, carried on the business alone until the 15th of November, 1894, when he and appellant Salter formed a partnership in the same business under the firm name of Salter & Meckes, at which time they made and signed the following agreement :

" OCTOBER 12, 1894.

Francis Salter and F. W. Meckes, under this date, form a copartnership as successors to F. W. Meckes, the new

firm to be styled Salter & Meckes, and to carry on a general mill business at 62nd and La Salle streets.

F. Salter has purchased an equal half interest in the business of F. W. Meckes for the sum of $5,000, and $3,000 of this amount is paid by surrender of mortgage note to said F. W. Meckes, and by payment of $2,000 in cash. His purchase is based on the following conditions:

*First.* That said F. W. Meckes agrees to pay and save F. Salter harmless from all amounts against the firm of Cox & Meckes or F. W. Meckes in excess of $7,353.25, which was shown by statement of ledger account November 1, 1894.

*Second.* That said statement is a true and correct statement of the accounts due said firm, amounting in the aggregate to $7,481.17.

*Third.* It is further agreed that the firm of Salter & Meckes have articles of agreement regarding salaries, loans, interest, etc., as shown in special writing.

FRANCIS SALTER.

F. W. MECKES."

Although the agreement is dated October 12, it is admitted that it was, in fact, made and executed November 15, 1894. It was probably antedated to correspond with the date of the dissolution of the partnership of Cox & Meckes.

Appellant Salter withdrew from the firm December 28, 1894, having been a partner in the business only one month and thirteen days. It appears from the evidence that the books of the firm of Cox & Meckes were used by the new firm, Salter & Meckes, being stamped Salter & Meckes, successors to, etc.; that all moneys received, whether from debtors of Cox & Meckes, or of Salter & Meckes, were deposited in bank to the credit of Salter & Meckes, and that separate accounts were not kept of moneys received from the debtors of the old firm or paid to the creditors of the old firms, also that the new firm continued doing business with the firm with which the former firm had dealt.

E. L. Welk, bookkeeper for Salter & Meckes, and formerly for Cox & Meckes, testified that shortly before the

contract was signed, he asked appellant if it was understood that he was to come in as a partner with Mr. Meckes and succeed Mr. Cox, who had retired from the firm, and assume the accounts and liabilities, and he said " Yes."

Cox, former partner of Meckes, testified that after appellant formed his partnership with Meckes, he tried to sell out his interest to him, Cox, and said that he was responsible on those old accounts; that he had property, and that Cox was not responsible.

Alexander Lendrum, an agent of creditors of the firm of Cox & Meckes, testified that November 16, 1894, he called on appellant and informed him that his business was to get a check for lumber sold by his principal to Cox & Meckes August 14, 1894; that appellant asked him what the account was, and said he had just become a member of the firm; that he had assumed the accounts of Cox & Meckes, and would see that a check was mailed in a few days.

Studt, an employe of appellee, testified that on November, 1894, he saw Salter at his office and informed him that he had come to collect the bill of the Hines Lumber Co.; that Salter asked him if he had come from Hines, to which the witness answered yes, when Salter said he would pay the bill in a week or ten days at latest; that he had bought an interest in the concern and would pay appellee as soon as everything was straightened up. Welk, bookkeeper for Salter & Meckes, testified that he drew a check in favor of the Hines Lumber Co., of date December 6, 1894, for $124, by the direction of appellant, who said at the time that the witness should make the check $124, so as to leave the balance $100.

The trial court, for some reason not apparent to us, ruled against the introduction of the check in evidence, but it was proved by another witness that appellee received the check, and it was paid, leaving a balance due on appellee's bill of $100.

William A. Herbert, collector for Condon & Co., testified that about the middle of November, or first of December, he asked Salter for money on account, and that Salter said he had assumed the liabilities there.

C. F. Wiehe testified that he was present at the trial before the justice, and heard F. W. Meckes, since deceased, testify. This witness' testimony was substantially as follows : " Mr. Meckes testified that it was talked between him and Mr. Salter that the firm of Salter & Meckes—that Mr. Salter was to buy a half interest in the firm. For that half interest he was to pay $2,000 in cash, and the firm was to assume the liabilities of the concern, and they were to take in turn for that plant and good book accounts, as near as I can recollect at that time—they were to take the good book accounts, and the firm of Salter & Meckes were to pay all liabilities. That is the substance. He said the liabilities of the firm of Cox & Meckes." On cross-examination the witness said that Meckes, in his testimony, did not fix the date of the conversation with Salter, but he (the witness thought) stated that it occurred after the signing of the paper, of date October 12th.

Appellant was the only witness in his own behalf. He denies the circumstances testified to by Meckes, and denies that he told Studt or Cox that he had assumed the debts of Cox & Meckes, but is silent as to the testimony of Lendrum and Herbert, and claims that he directed separate accounts to be kept of the debits and credits of the old firm, which was denied by the bookkeeper Welk, but disclaims knowledge as to whether such accounts were or not kept. He also denies the conversation testified by Welk to have occurred before the signing of the writing of date October 12th.

Appellant's counsel object that the testimony of Welk as to the conversation between him and appellant is incompetent, for the reason that the conversation was prior to the execution of the agreement of date October 12th. This objection appears to be based on the rule that when the agreement of parties is evidenced by a written instrument signed by them, all prior and contemporaneous parol agreements are deemed merged in the written instrument, and therefore evidence of such parol agreements is inadmissible. This rule, however, relates solely to parol agreements

between the parties to the written instrument, and not at all to declarations made by one of the parties to a stranger to the instrument, and the evidence objected to merely tends to prove such a declaration. Appellant testified and his counsel contend, that he had no interest whatever in the accounts due to, or the liabilities of the firm of Cox & Meckes. We think this inconsistent with the written agreement in evidence. Appellant testified that he wrote the paper, dated October 12th, in pencil; that Welk, the bookkeeper, copied it, and he, appellant, signed it.

Prior to the drafting of the agreement, the witness Welk prepared a statement showing the liabilities of the firm of Cox & Meckes to be $7,353.25, and the accounts due that firm to be $7,481.17.

In the agreement written by appellant himself, the accounts due the former firm are set down at $7,481.17, and the agreement contains this provision: " That said F. W. Meckes agrees to pay and save F. Salter harmless from all accounts against the firm of Cox & Meckes, or F. W. Meckes, in excess of $7,353.25, which was shown by statement of ledger account, November 1, 1894." If appellant purchased no interest in the account due the former firm, and was not to assume any responsibility in regard to that firm's liabilities, why were those accounts and liabilities mentioned in the agreement, and why was appellant so particular as to require an express agreement from Meckes, that he, Meckes, would save appellant harmless from all liabilities of the former firm in excess of $7,353.25, which was the total estimated amount of such liabilities? And why did he require the further agreement from Meckes that Meckes would, himself, pay all liabilities in excess of the last named amount—something which Meckes would have been bound to do, in the absence of any such stipulation? The agreement, as we think, conclusively shows that the half interest purchased by appellant in the business, included a half interest in the accounts due the firm of Cox & Meckes, and that the consideration moving from appellant was not only the sum of $5,000 mentioned in the agree-

ment, but, in addition thereto, the assumption of the liabilities of Cox & Meckes. Whether appellant assumed the sole responsibility for such liabilities or responsibility jointly with Meckes, it is not necessary to inquire, because, in either case, Meckes having departed this life, the action could proceed only against appellant. If the foregoing views are correct, there was, by necessary implication, a promise by appellant, for a good and valid consideration, to pay the liabilities of the former firm of Cox & Meckes, and such promise being for the benefit of the creditors of the former firm, actions may be maintained against appellant in their names.

But appellant's counsel contend that such an agreement can not be implied; that to make appellant liable he must have expressly agreed to pay; citing Wright v. Brosseau, 73 Ill. 383. The language in the case on which appellant's counsel rely is as follows : " It is the clearly established doctrine, that a new partner coming into an existing firm, will not be liable in respect to debts contracted by the firm previously to his entering it, unless he expressly assumes them." This language is not, in our opinion, equivalent to a statement that there must be an express agreement or promise to pay, nor do we think that the court, in the case cited, intended to commit itself to the doctrine that liability of an incoming partner for the former debts of the firm could not, in any case, be inferred or implied from circumstances, however strong, and this view is strengthened by the opinion of the court in Frazer v. Howe et al., 106 Ill. 563, in which the court say :

" While it is true that the incoming partner, in the case of the fluctuation of partners, or substitution of one partner for another, is not, in general, liable in respect of debts contracted by the firm previously to joining, yet there are exceptions to the rule, and it has been held, that ' payment of interest of old debts, length of standing in the firm, knowledge of the state of the books, accompanied with benefit derived from the contracts on which they are founded, will be evidence from which a jury may infer the assent of the incoming partner to debts previously contracted by the firm.

Collyer on Partnership, Perkins' Ed., Sec. 522. Parsons, in his work on Partnership, p. 435, says : ' On the whole, we should say that the law of contracts and the law of partnership lead to the conclusion that the new partner is not bound to the old creditors, unless on a promise to them for a consideration, both of which might, of course, be indirect, and implied by circumstances. Whether the new incoming partner has thus assumed the old debts, is sometimes a difficult question of mixed law and fact. It certainly may be implied by circumstances, and what circumstances should in any one case, imply it, is a question partly for the court and partly for a jury.' And after giving illustrations, he adds : ' And in general, whatever might be the form or technical effect of the contract, if, in substance, it amounted to an agreement by the incoming partner to share in the debts due from the firm, he would be held accordingly.' It was said by Lord Eldon, in Ex parte Reele, 6 Ves. Jr. 604, in speaking of this question : ' Slight circumstances might be sufficient, where, in the original transaction, the party to be bound was not a partner, but at the subsequent time had acquired all the benefit as if he had been a partner in the original transaction, and it would not be unwholesome for a jury to infer largely that that obligation clearly, according to conscience, had been given upon an implied authority.' " See also Cross v. National Bank, 17 Kans. 336.

A special promise to assume liability may be inferred from the conduct of an incoming partner. Ringo v. Wing, 49 Ark. 457.

The statements of appellant that he had assumed the liabilities of the former firm, his promises to pay such liabilities, and his actual payment of $124 on appellee's bill, are evidence that he understood his agreement with Meckes as binding him to responsibility for and payment of such liabilities. The evidence of Meckes before the justice of the peace shows that he also so understood the agreement, and when the sense in which the parties to an agreement understood it is ascertained, the agreement will be interpreted in that sense, if consistent with its words. The judgment will be affirmed.