Karraker v. Eddleman.

---

## D. W. Karraker, Assignee, etc., v. Dora Eddleman.

1. NOVATION—*Definition and Requisites.*—Novation is the substitution of a new obligation for an existing one and must be made by contract. The original agreement of which novation is sought must be absolutely extinguished and the new agreement substituted for it. All the parties, not only to the new contract but also to the one for which the new contract is substituted, must consent to the novation; the parties to the original contract must consent in order to have that extinguished, and the parties to the new contract in order to have a valid obligation substituted for the old.

2. PARTNERSHIP—*New Partner Not Responsible for Previously Contracted Firm Debts.*—A new partner coming into an existing firm, will not be liable in respect to debts contracted by the firm previous to his entering it unless he assumes them, and the same rule applies where one becomes a partner with another in a business already established.

3. SAME—*Presumption as to Incoming Partner Assuming Debts Previously Contracted.*—The presumption always is that an incoming partner into an existing firm does not assume the payment of previously contracted debts, but such presumption may be rebutted by satisfactory proof of a contrary intention and agreement.

4. SAME—*Evidence Necessary to Hold Incoming Partner for Firm's Previously Contracted Debts.*—To hold an incoming partner for previously contracted debts of an existing firm there must have been on his part a promise, agreement, or intention to assume the debt; but such promise may be proved by circumstantial evidence, *i. e.*, may be inferred from proof of such fact and circumstances as clearly warrant such inference.

**Voluntary Assignment.**—Claim. Error to the County Court of Union County; the Hon. MONROE C. CRAWFORD, Judge, presiding. Heard in this court at the August term, 1901. Reversed. Opinion filed March 3, 1902.

WM. A. SCHWARTZ and W. W. BARR, attorneys for plaintiff in error.

JAMES LINGLE and HILEMAN & SESSIONS, attorneys for defendant in error.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a claim filed by defendant in error, in the County Court of Union County, against the assigned estate of Linnell and Miller, who, prior to their assignment, were partners doing a banking business under the firm name of Bank of Cobden. Upon the filing of her claim by defendant in error, exceptions to its allowance were filed by D. W. Karraker as assignee of Linnell and Miller, and by Alice Miller as administratrix of the estate of the partner Miller, who had died subsequent to the assignment. At the trial, evidence was produced *pro* and *con* before the court, and the court overruled the exceptions and rendered judgment in favor of claimant for $1,549.32.

For a great many years prior to the formation of the copartnership between Linnell and Miller, Linnell had owned and conducted a bank in Cobden, known as the Cobden Exchange Bank, and had at the time of the formation of such partnership a number of creditors who had made "time deposits" in his bank and to whom he had given certificates of deposit bearing interest. Among such creditors was defendant in error, who held a certificate as follows:

Karraker v. Eddleman.

"Cobden Exchange Bank,
L. T. Linnell, Banker.

$1,400.00.                    Cobden, Ill., May 9, 1896.

Dora Eddleman has deposited in this bank $1,400.00, payable to the order of herself on the return of this certificate properly indorsed, with interest for even months, at four per cent per annum if left six months.  °

No. 4085.                         Lewis T. Linnell."

The partnership agreement between Linnell and Miller is in writing, and is as follows:

"Articles of Copartnership.—Articles of copartnership made and entered into this 10th day of September, A. D. 1898, by and between Lewis T. Linnell and Andrew J. Miller. 1st. The business to be carried on by and between the above-named persons as copartners shall be that of a general banking and fire insurance business. 2d. Said business shall be carried on and done in the village of Cobden, Union county, Illinois, at such place as may be agreed on by the members of the firm. 3d. The firm name and style of copartnership shall be 'Bank of Cobden,' and in such firm name, or in the name of Linnell and Miller, shall the business of the copartnership be done, conducted and carried on. 4th. Said copartnership shall continue, and said business shall be carried on for the term of five years. 5th. The business done by said copartnership shall be that which is ordinarily and usually done by banks not banks of issue, and shall be under the control of both members of the firm, who shall keep all proper books of account, which shall show fully and completely all transaction and business done by said bank or copartnership. 6th. Said Lewis T. Linnell shall be president, and said Andrew J. Miller vice-president. 7th. The president shall discharge all duties which usually pertain to that position, but in no case shall he, by virtue of his position, have any authority to exceed that possessed by the other member of the firm. The president's salary shall be the same as cashier in proportion to the time actually given to the services of the bank. He shall consult and advise with the vice-president before making loans of over one hundred dollars. 8th. The cashier shall perform all the duties generally performed and done by cashiers of banks doing like business. He shall annually furnish to the members of the firm a full and complete statement of the financial condition of the bank. His salary shall be $600 per annum. 9th. The loans made by the bank or copartnership shall not be allowed to exceed, at any one

time, the amount of the capital stock and surplus and seventy-five per cent of the deposits, and no loans exceeding one hundred dollars without the consent of both members of the firm shall be made. 10th. No loan shall be made on real estate security except by consent of both partners. 11th. The debts, overdrafts, or other dues from either partner to the bank, or copartnership, shall not exceed $3,000, provided the bank or copartnership may loan to either partner upon the written consent of the other partner such sums and upon such conditions and terms as are provided for general loans in section 12 hereof. 12th. No loans shall be made to any person, firm or corporation which shall exceed twenty-five per cent of the value of their property, over and above all incumbrances and exemptions, to be determined by the president and cashier. 13th. No loans shall be renewed or extended except by consent of both the president and cashier. 14th. No overdraft shall be allowed to run beyond the end of the month in which it is made. 15th. The president shall act as trustee for the firm, and to such trustee shall all mortgages and other conveyances of real and personal estate be made; by such trustee shall the same be held and enforced for the benefit of the firm, and said trustee shall, under direction of the firm, make all conveyances or other dispositions of the real or personal estate, which may at any time be held in his name. 16th. Dividends or distributable net earnings shall in no case exceed ten per cent of the capital stock of the bank after January 1, 1899, and after that date the balance of net earnings over ten per cent shall go into the surplus fund. 17th. The shares and interests of the above named copartnership and of its business, all of which is shown by the books of the firm, are equal, each owning a one-half interest, and they shall share equally in the profits and losses. 18th. Neither member of the firm shall bargain, sell, assign or transfer, or in anywise pledge his share or interest in said firm or in the property or assets, without having first given to the other member written notice thereof and an opportunity to buy his share or interest at a reasonable price therefor. 19th. In case of the withdrawal, death or disability of either member of the firm, the other member shall have the right to purchase the entire interest and shares of the withdrawal, deceased or disabled member at an appraised valuation to be made by arbitration, the arbitrators to be selected in the usual manner; and all necessary instruments shall be made for the transfer and conveyances of the said interest and shares

in the whole property, both real and personal; and if by reason of the minority of the persons interested as heirs or otherwise, or any other reason, it shall become necessary, application may be made by either side to the Circuit Court of Union County, Illinois, for the execution of all necessary deeds and instruments and other relief under and in furtherance of the provisions of this article.   Should either of the arbitrators be unable or refuse to act at any stage of the proceedings the other two may choose a third arbitrator, or in case for any reason the arbitration should prove a failure, then either side may apply to the person who shall then be acting as judge of the Circuit Court for the appointment of three appraisers who shall proceed as above required, and the remaining member, after such acquisition of said share or interest, shall assume, and within six months shall pay and discharge all debts and liabilities then existing against the firm or copartnership.   20th. Said shares or interest as appraised shall be paid for in cash, or in four, eight or twelve months in equal installments, with six per cent interest, or when a member has withdrawn, one-third in cash, one-third in three months and one-third in six months, with seven per cent interest.   Notes, mortgages and other property security shall be given for deferred payments to the satisfaction of said appraisers, who shall receive proper compensation for their services.   21st. All changes in or additions to these articles shall be in writing, signed by each member of the firm, and not otherwise.   In witness whereof, the above named partners have hereunto set their hands and seals the day and year first above written. Signed and sealed in duplicate:

Lewis T. Linnell,    [seal.]<br>Andrew J. Miller.  [seal.]

Attest:  E. A. Strong."

Upon the execution of this contract, Miller purchased of Linnell and paid him in cash therefor, one-half interest in the building and fixtures which Linnell owned, occupied and used in carrying on the business of the Cobden Exchange Bank, and they each contributed an equal amount of cash to the capital stock of the copartnership.   There was no "taking of stock" of the assets of the Cobden Exchange Bank, between Linnell and Miller.   So far as the evidence shows Miller took no interest in these.   They were all retained by Linnell, and were transferred on the books to

his credit before the copartnership commenced to transact business with the public. It is true that the cash and cash items of the Cobden Exchange Bank passed into the possession of the Bank of Cobden, but they passed as mere deposits, not as a part of the capital stock, and Linnell was credited with the whole of this, in his individual account with the bank, as would be the case with an ordinary depositor. After all this had been done the copartnership commenced to transact business with the public, and on September 23, 1898, there was published in a local newspaper the following :

" BANK OF COBDEN.

" The undersigned have entered into a copartnership for the transaction of a general banking business to be carried on at Cobden, Illinois, under the firm name of Linnell & Miller. Name of the bank to be ' Bank of Cobden.' The patronage of the public is solicited, which the proprietors hope by fair treatment and close attention to business to be able to secure. Mr. E. A. Strong will be retained as cashier.                                L. T. LINNELL,
                                           A. J. MILLER."

The business thus commenced continued until March 2, 1899, when Linnell, having overdrawn his individual account with the bank to the amount of $12,000, and being otherwise heavily indebted, and insolvent, made an assignment of his individual estate, and on the same day the firm of Linnell & Miller made an assignment. Both these assignments were made under the voluntary assignment laws of the State of Illinois. Plaintiff in error D. W. Karraker is the duly appointed and qualified assignee of the estate of the copartnership of Linnell & Miller. Defendant in error, who held the certificate of deposit referred to and quoted in the introductory part of this opinion, which was issued to her by Linnell some two years and a half before the formation of the copartnership of Linnell & Miller, filed that certificate as a claim against the assigned estate of the copartnership. The assignee of the copartnership estate, and the administratrix of Miller's estate, excepted to its allowance on the grounds, first, that the claim is not based on a

good and sufficient consideration; and second, that the claim is not a legal liability against the firm of Linnell & Miller.

The debt evidenced by the certificate of deposit held by defendant in error, was not originally a debt against the firm of Linnell & Miller, and is conceded to have been an individual indebtedness of Linnell alone, contracted by him long before the formation of the copartnership. This claim could not become a legal liability against the firm unless there was a novation, or unless Miller, the incoming partner, for a consideration, assented to its payment by the firm. Novation is the substitution of a new obligation for an existing one, and must be made by contract.

" The original agreement of which novation is sought must be absolutely extinguished, and the new agreement substituted for it. The extinguishment of the original obligation constitutes the consideration for the new one. All the parties, not only to the new contract, but also to the one for which the new contract is substituted, must consent to the novation; the parties to the original contract must consent in order to have that extinguished, and the parties to the new contract in order to have a valid obligation substituted for the old." American and English Encyclopædia of Law, 1st Ed., Vol. 16, pp. 862–7.

The evidence in this case falls far short of establishing any of the requisites of such novation. In fact we do not understand that counsel for defendant in error claim that the evidence establishes a novation. As we understand their position, it is, that the business was a continuing business; that Miller was an incoming partner; that the business of the copartnership was so conducted as to warrant the public in general and Linnell's creditors in particular in the belief that the firm had assumed the payment of the debts which Linnell had contracted in connection with the business while he was the sole owner of it, and that thereby the firm of Linnell & Miller became liable to pay this debt.

A firm or copartnership as constituted after an incoming partner has become a member thereof, can not in any case be held for the payment of a previously contracted debt for which such incoming member has not in some way

become bound, and it is the clearly and universally estab-lished doctrine, that a new partner coming into an existing firm, will not be liable in respect to debts contracted by the firm previous to his entering it, unless he assumes them, and the same rule applies where one becomes a partner with another in a business already established. (Wright v. Brosseau, 73 Ill. 381; Goodenow v. Jones, 75 Ill. 48; Mel-lor v. Lawyer, 55 Ill. App. 679; Frazer v. Howe, 106 Ill. 563; Salter v. Edward Hines Lumber Co., 77 Ill. App. 97.) The presumption always is that such incoming partner does not assume the payment of previously contracted debts, "but such presumption may be rebutted by satisfactory proof of the contrary intention and agreement." (Ameri-can and English Encyclopædia of Law, 1st Ed., Vol. 16, p. 910.) All the Illinois authorities proceed upon the theory that to hold such partner for such debt there must have been on his part a promise, agreement, or intention to assume the debt, but we regard it as well established that such promise, agreement or intention may be proved by circumstantial evidence, i. e., may be inferred from proof of such facts and circumstances as clearly warrant such infer-ence. (Salter v. Edward Hines Lumber Co., 77 Ill. App. 97; Frazer v. Howe, 106 Ill. 563.) It is not contended by counsel for defendant in error that there is any direct testi-mony tending to prove a promise, agreement or intention on the part of Miller to assume this or any of Linnell's indebtedness, but only that the evidence shows such facts in connection with the business and the manner of conduct-ing it as lead to and justify the inference that there was in fact such understanding and intention on Miller's part, with reference to all of this class of Linnell's indebtedness. In this we can not agree with counsel.

While it is true that so far as the public knew the busi-ness went on at the bank of Cobden substantially as it had at the Cobden Exchange Bank, and there was apparently little distinction between old business and new, and while the course of business was such as might estop both Miller and the firm from denying the validity of a transaction

Karraker v. Eddleman.

fully consummated, as was, in effect, held in Miller, Adm'x, v. Rendleman, yet all this falls far short of raising a just inference that Miller had intended and agreed to pay all of the debts that Linnell had contracted in pursuance of the business of the Cobden Exchange Bank. This case lacks one or more of the controlling features present in all the cases we have seen where such partners of such firms have been held liable in the absence of direct testimony tending to prove an express undertaking. In all those cases there was an adequate consideration in the fact that the incoming partner shared in full in the assets of the old firm or business, or in the fact that he shared in the benefits derived from the particular contract or indebtedness involved. In this case all the assets of the Cobden Exchange Bank were placed to the credit of Linnell, and Miller took no interest in them, nor did he in any way derive any benefit from the particular transaction between Linnell and defendant in error, out of which this indebtedness arose, nor from the indebtedness itself. In each of the Illinois cases (106 Ill. and 77 Ill. App. above cited), relied on by counsel for defendant in error, the new partner was a substituted partner. In one of them a woman, without paying anything to any one therefor, was admitted to her deceased husband's place in the firm of which he was a member, and in the other the new partner bought into the firm by purchasing the interest of a retiring partner, with the understanding at the time that he was to succeed the retiring partner in the business, and that the new firm was to assume the liabilities of the old one. In each of these cases the new partner shared to the full in all the assets of the firms into which they were thus admitted. Our Supreme Court, in 106 Ill. above cited, quoted at some length from Colyer on Partnerships, in which quotation appears the following: "and it has been held that payment of interest of old debts, length of standing in the firm, knowledge of the state of the books, accompanied with benefit derived from the contracts on which they are founded, will be evidence from which a jury may infer the assent of the incoming

partner." The case cited by the text writers in support of this says, "if interest has been paid by both" (partners). In the case before us interest was not paid by both, but was paid by Linnell only. True, it was paid with money drawn from the funds of the copartnership bank, but the amount was charged to Linnell's individual account. Linnell in effect borrowed the money from the firm with which to pay this interest. The text writers and the cases relied on by defendant in error all quote from Lord Eldon, and counsel repeatedly press the quotation upon us. The quotation is from some remarks made by that learned chancellor in course of his decision in Ex parte Peele, reported in 6 Vesey's Chancery Reports, at page 601. The remarks were concerning a case not before him then for determination, but one that was pressed upon him as authority, viz., Sheriff v. Wilks, reported in 1 East's Reports at page 47. More fully quoted, what Lord Eldon said, is:

"In Sheriff v. Wilks, very slight evidence possibly might have been sufficient to show that the partner knew the stock (a quantity of wine shipped to the West Indies), had been sold and the benefit taken into the stock in which he was a partner. * * * Slight circumstances might be sufficient, where, in the original transaction, the party to be bound was not a partner, but at the subsequent time had acquired all the benefit, as if he had been a partner in the original transaction."

We deem it not wholly unimportant to note that neither the new partner nor the new firm were held liable in either Peele's case, or in the case of Sheriff v. Wilks. The language quoted was mere suggestions thrown out by way of illustration in distinguishing the case then at bar from supposed conditions and supposed cases which the Lord Chancellor conceded might warrant the application of such rule as Peele's counsel were contending for, and his lordship followed these suggestions as to what "possibly might have been sufficient" to turn the scale in Sheriff v. Wilks, and what "might be sufficient" in the supposed case of a new partner who had acquired all the benefit of a transaction by the mere fact of having been admitted into the firm, as

I. C. R. R. Co. v. Behrens.

fully as if he had been a partner in the original transaction, by saying, "but that is not the case of this partnership." And so we are constrained to say of the case before us.

The judgment of the County Court of Union County is reversed.