(No. 18024.—

EMIL N. KIEFER *vs.* CATHERINE M. REIS *et al.* Plaintiffs in Error.—(EMIL N. KIEFER *et al.* Defendants in Error.)

*Opinion filed June 23, 1928.*

TURNER, HOLDER & BULLINGTON, for plaintiffs in error.

MAURICE V. JOYCE, and LOUIS P. ZERWECK, for defendant in error Emil N. Kiefer.

C. E. POPE, and H. F. DRIEMEYER, for defendant in error the State Savings and Loan Association.

Mr. COMMISSIONER PARTLOW reported this opinion:

Defendant in error Emil N. Kiefer filed a bill for a mechanic's lien in the circuit court of St. Clair county against plaintiffs in error, Catherine M. Reis and Michael C. Reis. The State Savings and Loan Association was made a party defendant as a mortgagee of the premises. The cause was referred to a master, who recommended a decree as prayed. Exceptions were overruled, a decree was entered in favor of Kiefer, an appeal was prosecuted to the Appellate Court for the Fourth District, where the decree was affirmed, and the cause is brought to this court by *certiorari*.

The bill alleged that on February 26, 1923, Kiefer entered into a contract with Michael C. and Catherine M. Reis, husband and wife, to build a dwelling house on a lot belonging to the wife, according to the plans and specifications furnished by an architect; that Kiefer erected the

house, furnished all material and labor and complied with the plans and specifications; that he was to receive $8790 on the original contract and $5603.94 for extra work and material, making a total cost of $14,393.94, of which $5500 was paid in cash, leaving a balance of $8893.94; that the house was accepted by plaintiffs in error; that Kiefer requested payment of the balance and the request was refused. The bill alleged that the State Savings and Loan Association had some interest in the premises as mortgagee, subject to the lien of Kiefer. The loan association answered, setting up its mortgage made by plaintiffs in error on June 5, 1923, which it claimed was prior to the lien of Kiefer; that Kiefer, at the time the mortgage was given, made a sworn statement in writing in which he alleged that all bills on account of work done and material furnished had been paid; that by this statement Kiefer waived his right to a lien prior to that of the mortgage; that by the terms of its mortgage the loan association was entitled to a solicitor's fee to be taxed as costs.

Plaintiffs in error alleged in their answer that they were not indebted to Kiefer in any sum and that all charges against them had been paid. They admitted the ownership of the property and the building of the house but denied that the contract was as set forth in the bill; denied that Kiefer had furnished extra labor and material in the amount claimed; alleged that Kiefer had failed to comply with his contract and that the house was not built in a workmanlike manner; that they had paid $5500 in cash, and had assumed, with the consent of all the parties concerned, including Kiefer, a claim of the East St. Louis Lumber Company, a sub-contractor, for lumber and millwork in the sum of $5476.11; that they had assumed, with the consent of all of the parties concerned, the claims of other sub-contractors for labor and material, both under the original contract and for extra labor and material, amounting to $2816.28, which amounts they had fully paid and discharged; that they had

paid Kiefer $13,792.39, which exceeded the entire cost of the building and extras by the sum of $1322.76, and that Kiefer was indebted to them in the sum of $1322.76.

The master found that before Kiefer put in his bid Reis told him he would give Kiefer a preference of $500; that Kiefer's bid was $8647; that Reis prepared a contract, which Kiefer signed, in which the contract price was $8790, being the amount of the bid plus $500, from which deductions for certain items amounting to $357 were made, leaving the contract price $8790; that the written contract was never returned to Reis; that the total amount of the contract and extras was $13,705.46, of which $5500 had been paid, leaving a balance of $8205.46; that Reis had paid sub-contractors $2764.18, which should be deducted, together with $35 for work on the stairway, leaving a balance of $5406.28. On the question of the amount due the East St. Louis Lumber Company, which Reis claimed to have assumed in the sum of $5476.11, the master found that the evidence did not support the contention of Reis and he was entitled to no allowance for the payment or assumption of this account; that the total bill of the lumber company was $5476.11, of which $3021.03 was due on the original contract and the remainder was for extras; that plaintiffs in error were not entitled to any deduction for defects in material or workmanship except $326; that the amount due Kiefer, with interest at five per cent from October 12, 1923, was $5348.39; that the mortgage executed by plaintiffs in error to the loan association was a first lien, and the written statement of Kiefer barred him from claiming a priority over this mortgage; that the mortgage authorized a solicitor's fee of $600; that a decree should be entered for $5348.39.

The decree found the contract price was $8790, the general contractor's extras were $1973.71 and the sub-contractors' extras were $2600.41, making a total of $13,-364.12; that $5500 had been paid in cash and $2764.18

had been paid by plaintiffs in error to sub-contractors other than the lumber company; that plaintiffs in error were entitled to a credit of $326 for mistakes and omissions, leaving $4773.94 balance due, together with interest from October 12, 1923, to December 22, 1924, amounting to $253.70, or a total of $5027.64; that the mortgage to the loan association was a first lien, and that it was entitled to a solicitor's fee of $400 instead of $600, to be taxed as costs against plaintiffs in error.

Plaintiffs in error insist they should have been allowed credit for the bill of the East St. Louis Lumber Company, amounting to $5476.11, which they claim to have assumed under an agreement between all of the parties; that they had paid the full amount due Kiefer and he was not entitled to a lien, therefore the interest allowed was erroneous and the costs should have been taxed against Kiefer. This claim resolves itself into two parts: First, whether plaintiffs in error were entitled to credit for the lumber company bill; and second, if they were entitled to that credit, what the amount of the credit should be. The lumber company was a corporation. Its board of directors consisted of three members: Michael C. Reis, his brother, Henry Reis, and J. O. Doussart. Henry Reis was president of the corporation; Michael C. Reis was a stockholder, director, general manager and treasurer; and Doussart was a stockholder, director, secretary, book-keeper and had charge of the office. The lumber company furnished the lumber and millwork for this house. Upon its completion the lumber company sent to Kiefer a statement of account showing $5476.41 due for lumber and millwork on the original contract and for extras. This statement, together with the statements of account of the other sub-contractors, was delivered by Kiefer to Reis. Reis testified that Kiefer requested that Reis pay these bills and that the balance due be paid to Kiefer. This was denied by Kiefer, but we think the evidence shows he made such a request or at least acquiesced

in such an arrangement. The evidence shows that plaintiffs in error paid most of the sub-contractors whose bills were delivered to them by Kiefer. The master found, and the decree recited, that plaintiffs in error paid $2764.18 due sub-contractors other than the lumber company. Plaintiffs in error claim that they not only paid most of the sub-contractors, but that they assumed the bill of the lumber company and agreed to pay it with the knowledge and consent of all the parties interested; that in pursuance of this agreement the Reis account on the books of the lumber company was charged with the amount of the bill and Kiefer's account was credited with it, therefore the account was released as far as Kiefer was concerned. The chancellor and the Appellate Court held that the facts, under the pleadings, did not constitute a novation and plaintiffs in error were not entitled to credit for the payment of this bill; that it was not so alleged in the pleadings and the evidence did not show such an agreement by all parties.

The essentials of a novation are, first, a previous valid obligation; second, a valid agreement of all of the parties to a new contract; third, the extinguishment of the old contract; and fourth, the validity of the new contract. (*Commercial Nat. Bank* v. *Kirkwood,* 172 Ill. 563; *Walker* v. *Wood,* 170 id. 463; *Hayward* v. *Burke,* 151 id. 121.) When Kiefer delivered to Reis the statement of account of the lumber company, together with the claims of the other sub-contractors, and Reis paid the sub-contractors and caused the transfer on the books of the lumber company, such acts evidenced a request from Kiefer to Reis to pay the accounts. If that request was accepted and complied with by Reis it constituted a contract binding on both parties, and Kiefer will not be heard to say that he did not consent to such an arrangement. His every act shows such a request, consent and agreement. He did not pay the lumber bill or the other sub-contractors but left the payments to plaintiffs in error. The entries on the books of

the lumber company crediting Kiefer with the amount of his bill and charging the same to Reis, which entries were made by Doussart at the request of Reis, constituted an agreement by the lumber company to accept Reis for the payment of the bill and an agreement by Reis to pay the same, and therefore the lumber company released Kiefer from liability for its payment. It cannot be said that the lumber company did not agree to this arrangement, for the reason that its books were offered in evidence showing the acceptance of Reis and the release of Kiefer. The transfers were made by two of the three directors of the lumber company, who were in active charge of its affairs. The bill of the lumber company offered in evidence, at the bottom is marked, "Paid December 1, 1923.—J. O. D." The initials are the initials of Doussart and the receipt was in his handwriting. Both plaintiffs in error in their answer set up the assumption of the lumber company claim, therefore neither of them is in a position to deny that they consented to the assumption. The evidence and the pleadings were sufficient to show a novation by all of the parties interested, and plaintiffs in error were entitled to credit for whatever sum the evidence showed was due the lumber company from Kiefer.

Kiefer claims that even though plaintiffs in error were entitled to credit for the amount of the lumber company bill, he only owed the lumber company $3021.03 instead of $5476.11, as claimed by plaintiffs in error, leaving a balance due Kiefer for which he was entitled to a decree. He insists that the difference between the two amounts arises from the fact that the lumber company charged him with all of the extra millwork, for which he made no charge against plaintiffs in error for the reason that they agreed to pay the lumber company for extra millwork as the work progressed. On this point the master found that under the original contract, for lumber and millwork Kiefer owed $3128.08; that he owed $960.11 for extra lumber not in-

cluded in the original contract, making a total charge of $4088.19, on which he was entitled to a credit of $1067.08 for lumber returned or not delivered, leaving $3021.11 due from him to the lumber company; that Kiefer in his statement of claim to plaintiffs in error made no charge for extra millwork but only for extra lumber, for the reason that plaintiffs in error agreed to pay the lumber company for the extra millwork as the work progressed. It is admitted by plaintiffs in error that the $5476.11 charged against Kiefer included all lumber and millwork under the original contract and all lumber and millwork for extras. The decree contained no specific finding on the question of the amount due from Kiefer to the lumber company for lumber and millwork under the original contract and for lumber for extras. The decree found that the original contract was $8790, that Kiefer's extras were $1973.71, that the sub-contractors' extras were $2600.41, making a total of $13,364.12. On this total $5500 was paid in cash, $2764.18 was paid by plaintiffs in error to sub-contractors other than the lumber company, and plaintiffs in error were entitled to a credit of $326 for mistakes and omissions, leaving $4773.94 balance due, with interest. From this amount, if $3021.11 (the amount due the lumber company and assumed by plaintiffs in error) is deducted the balance is $1752.83, for which Kiefer would be entitled to a decree, with interest from October 12, 1923. Upon the record presented it is impossible for this court to verify the finding of the master that $3021.11 is the balance due from Kiefer to the lumber company for millwork and lumber under the original contract and for lumber furnished for extras but not including extra millwork, and we must accept these figures as correct. The reason for our inability to verify these figures is that the record contains several hundred pages which are not even numbered or indexed. The record is abstracted into thirty pages, which contain only the evidence covering the errors alleged by plaintiffs in error. The abstract does not refer

to the pages of the record on which any particular item of evidence may be found. The evidence of Kiefer and Reis, who were the only witnesses who testified to the amount due the lumber company, is scattered through the entire record. Each witness was on the stand several times. In this condition of the record this court is not required to search the record to verify the finding of the master as to the amount due the lumber company, or to verify the finding of the master that plaintiffs in error were to pay the lumber company for the extra millwork as the work progressed, or that the extra millwork was not included in the statement of account furnished by Kiefer to plaintiffs in error. We therefore accept the finding of the master that the $3021.11 was correct and that the agreement was as claimed by Kiefer. This amount deducted from $4773.94, the balance found by the decree to be due, leaves $1752.83, for which Kiefer is entitled to a decree, together with interest from October 12, 1923.

Section 5 of the Mechanic's Lien act provides that it shall be the duty of the contractor to give the owner, and the duty of the owner to require of the contractor before the owner shall pay to the contractor any money due such contractor, a statement in writing, under oath, of the names of all parties furnishing material and labor and the amount due or to become due each. Merchants and dealers in material only shall not be required to make the statements therein provided. Section 27 provides that when the owner is notified as provided in the act, he shall retain from any money due the contractor an amount sufficient to pay all demands that are due the sub-contractors of whose claims he is notified, and he shall pay over the same to the parties entitled thereto. Section 32 provides that no payments to the contractor shall be regarded as rightfully made as against sub-contractors if made by the owner without exercising or enforcing the rights and powers conferred upon him in sections 5 and 22. Kiefer furnished plaintiffs in

error with a list of claims due sub-contractors, as provided in section 5, except that the statement was not under oath. It was accepted, however, by both parties as showing the amounts due, and plaintiffs in error had notice of the amounts due sub-contractors, including the amount due the lumber company. Under section 27, upon receiving this notice plaintiffs in error had a right to retain from any amount due Kiefer an amount sufficient to pay all demands due sub-contractors, and it became their duty to pay such amounts retained to the parties entitled thereto. In compliance with the provisions of the statute, separate and apart from any question of a novation, plaintiffs in error were entitled to retain from any amount due Kiefer a sufficient amount to pay the claims of all sub-contractors, including the lumber company to the amount of $3021.11, about which there is no controversy.

Kiefer's original bid was $8647. He testified that he had an understanding with Reis, before he put in his bid, that Reis would pay him $500 more than the bid; that he was to be allowed a preference of $500 over other contractors because he had been a customer of the lumber company for many years. This was denied by Reis, but the $500 was allowed by the master and by the decree. A slip of paper with figures on it, in the handwriting of Reis, shows the original bid of $8647, to which was added $500, and from this was deducted $357, being for changes in the specifications, leaving $8790 as the contract price which was stated in the written contract drawn by Reis. Reis attempted to explain this difference by testifying that the $500 was placed below the contract price because the estimate of the lumber company was approximately $500 less than the amount of lumber and millwork required, and he was trying to determine how much more the house would cost according to Kiefer's figures as compared with the figures of the other contractors who bid. We do not think the evidence sustains this contention, and the chancellor was

warranted in holding that Kiefer was entitled to a $500 preference.

The mortgage from plaintiffs in error to the loan association provided that in case of any suit at law or in equity wherein said mortgagee should be a party plaintiff or defendant it should be allowed a reasonable attorney's or solicitor's fee, to be fixed by the court in which such suit was pending, to be taxed as cost. The decree fixed a solicitor's fee of $400 to be taxed against plaintiffs in error. No complaint is made of the allowance of the fee, but plaintiffs in error contend that it should have been taxed against Kiefer. The allowance of such a fee was sustained in *Huber* v. *Brown,* 243 Ill. 274. Plaintiffs in error cite no authority to support their contention that the fee should be taxed against Kiefer, who did not agree that it might be so taxed. The fee was taxed by virtue of the contract between the mortgagor and the mortgagee, and it is not controlled by any statute with reference to costs. The provisions of the mortgage were binding upon the mortgagor and mortgagee but were not binding upon Kiefer. The fee was properly taxed against plaintiffs in error.

The decree of the circuit court and the judgment of the Appellate Court will be reversed and the cause remanded, with directions to enter a decree in favor of Kiefer for $1752.83, together with interest from October 12, 1923, in accordance with the views above expressed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*