Printing Machinery Maintenance, Inc., Appellee, v. Carton Products Company, Appellant.

**Gen. No. 47,148.**

First District, First Division.
December 16, 1957.
Rehearing denied January 16, 1958.
Released for publication February 10, 1958.

Jacob Shamberg, Pierce L. Shannon, and Hugh M. Matchett, of Chicago (Hugh M. Matchett, of counsel) for appellant.

Ettleson & O'Hagan, of Chicago (Robert E. Samuels, and Leonard B. Ettleson, of counsel) for appellee.

JUSTICE McCORMICK delivered the opinion of the court.

This action was brought by Printing Machinery Maintenance, Inc. (hereafter referred to as plaintiff) against Carton Products Company (hereafter referred to as defendant) to recover judgment for the purchase price of a certain folding box manufacturing press, lift and other equipment. The plaintiff made a motion for summary judgment supported by affidavit. Counteraffidavits were filed, and after hearing, the court

entered a summary judgment in favor of the plaintiff in the sum of $17,900, from which judgment this appeal is taken.

In the case as presented to the trial court two contracts were involved: one entered into on June 3, 1955 between the plaintiff and the defendant (hereafter referred to as the first contract), and another entered into on September 14, 1955 between the plaintiff and Hirsch Enterprises, Inc. (hereafter referred to as the second contract). The question to be resolved is as to whether or not there was a rescission of the first contract and a substitution of the second contract in the nature of a novation, and as to whether the court properly entered the summary judgment.

In order to facilitate following the facts before the court we will at the outset list the corporations and persons involved.

Printing Machinery Maintenance, Inc., plaintiff, is a New York corporation engaged in the business of manufacturing, rebuilding and selling machinery and equipment principally to the printing and engraving trades. Its secretary is Sidney Fishbane.

Carton Products Company, the defendant, is an Illinois corporation doing business in Chicago, Illinois. Edward J. Hirsch is its president.

Hirsch Enterprises, Inc., is an Illinois corporation doing business in Chicago, Illinois. Edward J. Hirsch is its president.

Franklin Folding Box Company is an Illinois corporation doing business in Chicago, Illinois. It had been owned by one C. G. Francke, and it was purchased from him by Edward J. Hirsch on September 1, 1955 as a going concern.

William Curtis Machinery Moving Company is located in Chicago and Charles Curtis is connected with it.

Cooper Jarrett, Inc., is a motor freight service company.

The first contract, which was entered into on June 3, 1955, is in the form of a typewritten letter directed to the plaintiff, attention of Sid Fishbane, and was signed by E. J. Hirsch, president of defendant. It constitutes an order for one Miehle two-color press at a price of $30,000 and two Miehle single-color presses at the price of $14,500 each, one of which presses is in controversy here and will hereafter be referred to as item A, all of which were to be delivered "FOB your plant, loaded on trucks." It further provides that for the erection of the presses the plaintiff will supply one man at no cost. The contract also has written into it in ink: "3 Berry Type Lifts @ 1,800.00—5,400.00" (one of which is also the subject matter of this suit and will hereafter be referred to as item B). The contract provided for the payment of $13,500 on acceptance, the balance of $45,500 was to be evidenced by notes. This contract was accepted by the plaintiff and bears the signature Sidney Fishbane, plaintiff's secretary. It should be noted that in the agreement the $5,400 listed as the price of the three Berry lifts is not part of the $59,000 payment provided and no other provision is made for the payment of that sum.

The second contract, a printed form filled by typewriting, dated September 14, 1955, which was attached to the answer, was between plaintiff and Hirsch Enterprises, Inc. and provided for the sale of one Miehle two color press for $30,000 and one Miehle single color press at $14,500, together with two Berry lifts for $1800 each. The total sum due plaintiff under this contract is $48,100, which was to be paid $13,500 upon the execution of the contract, and the balance of $34,600 was to be evidenced by notes.

On July 12, 1956 this suit was filed, predicated on the first contract (a copy of which was attached to the complaint), to recover the purchase price of item A in the amount of $14,500 and item B at a listed price of $1,800, together with certain other goods

546

alleged to have been sold and delivered in June, 1955, at a price of $1,600, making a total claim of $17,900. There is no dispute concerning the additional goods in the amount of $1,600.

Delivery and acceptance of items A and B are alleged in the complaint. It is also alleged that the defendant had, in accordance with the terms of the first contract, paid plaintiff $13,500 which afterwards, at the request of the defendant, was applied to the payment of equipment purchased under said contract other than items A and B.

Defendant filed an answer denying the performance of the first contract and setting up that the second contract (a copy of which was attached) between the plaintiff and Hirsch Enterprises, Inc. was a substitution and a novation by which the defendant was discharged from the performance of the first contract. It denies delivery, admits the payment of $13,500 upon execution of the first contract, but alleges that it assigned the said credit to Hirsch Enterprises, Inc. which with the approval of the plaintiff applied the credit to the second contract. The defendant admits an indebtedness of $1,600 on the sale and delivery of the other items.

On July 30, 1956 a motion for summary judgment was filed by the plaintiff supported by affidavits. On August 29, 1956 the defendant filed an answer to the motion for summary judgment, alleging there were genuine issues as to material facts created by the pleadings in the case, and in support of such answer filed affidavits.

The affidavits filed by the plaintiff set out that by the first contract E. J. Hirsch, president of the defendant, on behalf of said company, agreed to purchase items A and B at an agreed price, which items were delivered in Brooklyn, New York to Cooper Jarrett, Inc., an over-the-road trucking company, consigned to defendant. Attached to the affidavits in

support thereof are true copies of three delivery receipts, which receipts purport to be signed for the defendant by one Curtis, as agent for the Curtis Machinery Moving Company located in Chicago.

The affidavits filed by the defendant and considered by the court at the time of the entry of the summary judgment set out discussions between Fishbane, secretary of the plaintiff, and Hirsch, president of the defendant, with reference to the purchase by the defendant of certain presses, including items A and B, to be reconditioned by the seller for use by the defendant. The affidavits also state that the first contract was then entered into and a deposit of $13,500 was paid to the plaintiff; that later Hirsch advised the plaintiff, through Fishbane, its secretary, that he was considering the possibility of purchasing Franklin Folding Box Company as a going concern, and asked Fishbane to hold up the reconditioning of the machines until that matter was settled; that Fishbane disregarded the instructions of Hirsch and about the first of August Hirsch advised Fishbane that it was impossible to take delivery and that he was sure that one of the presses would have to be cancelled in view of the fact that the deal for the purchase of the folding box company would be completed and that item A would then be surplus equipment and at that time Hirsch warned Fishbane not to ship any of the equipment; that in August of 1955 Fishbane took it upon himself to ship item A to the Franklin Folding Box Company, which at that time was not owned by the defendant or Hirsch; that prior to the shipment of item A Hirsch had told Fishbane it was impossible to purchase item A and had verbally canceled the order; that at the same time Hirsch told Fishbane he would like to also cancel the orders for the two other color printing presses; that Fishbane then said in the presence of one Howard Buck that he could cancel item A but would not cancel out any of the other

548

equipment; that after item A was shipped into Chicago in August of 1955, and after Hirsch told Fishbane he could not use the machine, Fishbane gave Charles Curtis of the William Curtis Machinery Moving Company instructions to remove item A from the premises of the Franklin Folding Box Company to a warehouse, the whereabouts of which is unknown to Hirsch; that Hirsch completed the negotiations for the purchase of the Franklin Folding Box Company on September 1, 1955; that in the latter part of August, 1955, Hirsch discussed with Fishbane the formation by Hirsch of a corporation to be known as Hirsch Enterprises, Inc., to own and take delivery of the two other machines included in the first contract, which orders Fishbane had previously refused to cancel; that on or about September 14, 1955 the plaintiff entered into a contract with Hirsch Enterprises, Inc. (the second contract) for the purchase of the two machines and at that time Fishbane again stated that the machine in controversy (item A) was canceled out and that the second contract with Hirsch Enterprises, Inc. superseded and took the place of the first contract which had been entered into on June 3, 1955; that Fishbane further said that the down payment of $13,500 made on the first contract would be transferred over and assigned to the second contract; that Fishbane delivered the machines as instructed to Hirsch Enterprises, Inc. Hirsch further states in the affidavits that since entering into the second contract payments on the notes, executed as provided for under that contract, were made when due by Hirsch Enterprises, Inc. with its own check; that the purported delivery receipts attached to the affidavits submitted by plaintiff, including the one for item A, were not signed by an agent of the defendant, but were signed by an agent of the Curtis Company, which was not authorized by the defendant to accept delivery and which was at all times acting under the instructions of Fishbane; that

the defendant had received none of the delivery receipts nor had any knowledge of them until the attorney for the plaintiff gave him copies on September 19, 1955; that the plaintiff has at no time requested that the defendant deliver to it promissory notes as provided in the first contract, but has received the promissory notes as provided in the second contract from Hirsch Enterprises, Inc. in payment for the two machines covered by that contract and has applied to such contract the deposit of $13,500.

On November 1, 1956 the trial court entered an order sustaining the motion of the plaintiff for summary judgment and entering judgment for $17,900 against the defendant.

The defendant's contention here is that the plaintiff is not entitled to summary judgment since the contract sued upon was terminated by rescission and novation, and states that the judgment of the trial court should be reversed without remanding, inasmuch as the trial court should have entered summary judgment for the defendant, or the judgment of the trial court should be reversed and the cause remanded for trial of the issues of fact presented.

The plaintiff's theory of the case is that the contract of June 3, 1955 is a valid existing contract between plaintiff and defendant for the purchase of the printing press and lift (items A and B); that there is no dispute as to the sale and delivery of the additional equipment mentioned in the complaint; and that the defendant by the facts alleged in its counteraffidavits has raised no legal defense.

■ The question before this court is whether the trial court properly entered a summary judgment against the defendant for $17,900 representing the purchase price of items A and B and other equipment. The right to the entry of a summary judgment is created by statute (section 57 of the Practice Act supplemented by rules 15 and 16 of the Supreme

Court). Summary judgment procedure is intended to avoid the expense and delay of a trial where there are no issues of fact, and such judgment can only be granted where there are no triable issues before the court. Section 57 of the Practice Act provides that the plaintiff or defendant may move for a summary judgment with or without supporting affidavits for all or any part of the relief sought; that the opposite party may file counteraffidavits, and that the judgment shall be rendered if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In Shirley v. Ellis Drier Co., 379 Ill. 105, the Supreme Court states:

"In Diversey Liquidating Corp. v. Neunkirchen, 370 Ill. 523, we said: 'The purpose of a proceeding for summary judgment is to determine whether a defense exists. Where a defense raising an issue of fact as to plaintiff's right to recover is set up, a summary judgment must be denied.' The trial court correctly announced the rule as to when a summary judgment may be entered when it said: 'The court . . . then determines if the evidence contained in these affidavits was orally submitted to the court, there would be something left to go to a jury. If there is anything left to go to the jury the motion for summary judgment is denied. If what is contained in the affidavits would have constituted all of the evidence before the court and upon such evidence, there would be nothing left to go to the jury, and the court would be required to direct a verdict, then a summary judgment will be entered.' "

The question is: Could the trial court, in considering the motion for summary judgment together with the pleadings and affidavits, say that as a matter of law the first contract with reference to the one press and lift involved (items A and B) was still in effect and

551

that the obligation of the defendant thereunder had not been discharged by virtue of the subsequent conduct of the parties thereto, and could it also say that the affidavits raised no material issue of fact? There is no dispute between the parties that the contract of September 14th was inconsistent with and modified the contract of June 3rd as to two presses and two Berry lifts. The only question is as to whether that contract, with reference to the press and lift involved in this suit (items A and B), should be considered one of exclusion of or co-existence with the first contract. The question involved what is known in contract law as a "novation."

■■■ A novation is a substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished. 28 I. L. P. Novation, p. 669. All novations are substituted contracts; and the converse is also true that all substituted contracts are novations, though the term "novation" is usually used only where the substituted contract involves a substituted debtor or creditor as a new party. The new contract may adopt and include a part of the antecedent one and it becomes a question of interpretation how far the new agreement operates as a discharge and how many antecedent claims are included and discharged. If the new agreement contains terms clearly inconsistent with the previously existing contract or claim, the fact of inconsistency is itself a sufficient indication of intention to abrogate the old and substitute the new. Corbin on Contracts, Vol. 6, Secs. 1293, 1296.

■■ If the first and second contracts were the only matters within the purview of the court and were considered alone, there is nothing within the four corners of either contract which would prevent the co-

existence of the two contracts with reference to items A and B. Both contracts could be valid and enforcible, the second contract with reference to two of the presses and lifts, and the first contract with reference to the one press (item A), for the purchase price of which, among other things, this suit is brought. However, on the motion for summary judgment the court had before it not only both contracts but also the affidavits setting forth in detail the negotiations of the parties with reference thereto. The counteraffidavits filed by the defendant set out that there was a mutual rescission of that portion of the first contract which dealt with the one press and lift (items A and B), the subject matter of the instant suit. It is the law that where there is a bilateral executory contract, mutual consent to a rescission of all or any part of the contract discharges both parties accordingly, and such agreement is sufficient consideration therefor; and this is true even though the original contract that is the subject of rescission has been partly performed by one or more of the parties thereto. The agreement may be oral, and neither the parol evidence rule nor the statute of frauds is applicable. Corbin on Contracts, Vol. 5, Sec. 1236. The actions of the parties as alleged in the affidavits fall within the rule. Hirsch, president of Hirsch Enterprises, Inc. and its agent, negotiated with Fishbane, secretary and agent of the plaintiff. In August and prior to the shipment of the press in controversy he, Hirsch, told Fishbane that it was impossible for him to take delivery; that one of the presses would have to be canceled; that the defendant could not purchase the machine and then and there verbally canceled the order; that at the same time he told Fishbane that he would like to cancel "the two color printing press." Fishbane agreed to cancel the order for the single color press (item A) but refused

to cancel out any of the other equipment. The affidavits also set out that at the time when the second contract was entered into with Hirsch Enterprises, Inc. (a new corporation which had been formed, of which Hirsch was also president, as well as being president of the defendant) Fishbane, as the secretary and agent of the plaintiff, told Hirsch, president and agent of both Hirsch Enterprises, Inc. and the defendant, that the order for the machine in controversy was canceled and that the second contract with Hirsch Enterprises, Inc. superseded and took the place of the first contract. In the previous conversation between Fishbane and Hirsch concerning the first contract, according to the affidavits, it was agreed that the contract should be rescinded as far as the press involved in the instant suit was concerned (item A). Hirsch had asked that the contract should also be rescinded as far as the two color press was concerned. To this Fishbane would not agree. At the time when the contract of September 14th was entered into Fishbane agreed with Hirsch that the second contract should supersede and take the place of the first contract, thus discharging the defendant as to any obligation which it might have with reference to the one color press and the Berry lift (items A and B) which are the subjects of the suit before us. If the facts stated in the affidavits are true, the second contract becomes a novation and supersedes completely the first contract and the defendant is fully discharged from any and all obligations which may have been created by that contract. The summary judgment was improperly entered.

■■ The plaintiff urges the point that the second contract could not be a novation discharging the defendant since there was no mention made in the contract of such discharge, nor was there any consent on the part of the defendant thereto. In Corbin on Con-

554

tracts, Vol. 6, Sec. 1299, the author says: "It is frequently said that there can be no novation without the assent of three parties, the creditor, the new party, and the debtor. If this was ever the law, it is so no longer." He refers to statements to the contrary as dicta and states that such cases have been collected in quantity in the note to F. I. Somers & Sons v. LeClerc, 8 Atl.2d 663 (Vt.), appearing in 124 A. L. R. p. 1494. Corbin further says:

"There is nothing to prevent the third person from tendering his promise as an immediate substitute for and a discharge of the debtor's obligation, and the acceptance of this offer by the creditor at once effectuates the substitution. In cases like this, the debtor is a donee beneficiary of the transaction. It is now well established law that two parties can create an enforceable right in a donee beneficiary, without his knowledge or assent; and in like manner they can discharge him from a pre-existing duty, creating in him the legal privilege not to pay. Of course the debtor does not have to assent to the benefit; if, when sued, he pleads it in defense he is then assenting. If he does not plead the defense, judgment will go against him, just as in case he fails to plead some other good defense that may exist."

Professor Corbin also points out that the assent of the debtor would be necessary if the proposed novation involves, besides his discharge from the pre-existing obligation, his assumption of some new duty or of the incurring of some new obligation.

Professor Williston, in Williston on Contracts, Rev. Ed., Vol. 6, Sec. 1870, says:

"It is undoubtedly a commonplace in the discussion of novations that the assent of all parties is necessary; and certainly no new debtor can be bound without his assent and no old debtor can be discharged without the creditor's consent, but broader generalizations may

555

be misleading. Everything depends on the character of the right or duty or both, of which a novation is sought. Various situations should be separately examined."

Also see Alexander v. Angel, 236 P.2d 561 (Cal.).

Among the cases cited in the note in 124 A. L. R. at page 1494 are certain Illinois cases (Kiefer v. Reis, 331 Ill. 38; The John Deere Plow Co. v. Leeper, 194 Ill. App. 92; Netterstrom v. Gallistel, 110 Ill. App. 352; Hofman v. Chicago League Ball Club, 195 Ill. App. 249; Swords Co. v. Hogland, 278 Ill. App. 611), and the courts in Illinois have stated that the essentials of a novation are, first, a previous valid obligation; second, a valid agreement of all of the parties to a new contract; third, the extinguishment of the old contract; and fourth, the validity of the new contract. Kiefer v. Reis, supra; Walker v. Wood, 170 Ill. 463; Hayward v. Burke, 151 Ill. 121; The John Deere Plow Co. v. Leeper, supra; Netterstrom v. Gallistel, supra; Karraker v. Eddleman, 101 Ill. App. 23; Hofman v. Chicago League Ball Club, supra; Swords Co. v. Hogland, supra. However, the opinions in these cases, with the exception of Swords Co. v. Hogland seem to go no further than to hold that a new debtor cannot be substituted without assent, nor can the old debtor be discharged without the consent of the creditor. In Swords Co. v. Hogland the court assumes, without discussion or citation of authority, that the consent of the former debtor would be necessary to a novation, but the court also says that such consent may be established by facts and circumstances appearing in evidence. The plaintiff is not helped even if we consider that the rule in Illinois requires the consent of the debtor in the first contract. Assent on the part of a creditor or debtor to the new contract creating a novation may be implied from facts and circumstances attending the transactions, or from the

subsequent conduct of the parties. Such assent need not be specifically mentioned in the new contract. Lechleiter v. Lechleiter, 330 Ill. App. 517; Burnett v. West Madison State Bank, 375 Ill. 402; Swords Co. v. Hogland, supra. Here, according to the affidavits, when the negotiations were entered into Hirsch, as president of the Hirsch Enterprises, Inc., participated. At the same time Hirsch was the president and agent of the defendant, a fact well known to Fishbane, the agent of the plaintiff. All of these facts and circumstances could be properly considered in determining whether the creditor and debtor under the first contract and the debtor under the second contract intended that the second contract should be a novation and discharge the debtor under the first contract. The question is one of intent, and the circumstances all indicate a novation.

 It is urged by the plaintiff that since the first contract with reference to the items at issue was fully performed there could be no rescission by mutual consent under the circumstances before us. However, even if we would assume that there actually was a delivery in accordance with the terms of that contract, nevertheless all that resulted was a partial performance of the contract. Under such circumstances the parties had a right to rescind by mutual agreement. Corbin on Contracts, Vol. 6, Sec. 1294.

As we pointed out, the first contract itemized the purchase price of all the items included therein. It also provided in detail for payment in cash and by notes of the amount due thereunder. The amount which the defendant obligated himself to pay was less than the itemized statement of the purchase price by the amount of $5,400, which is the list price of the three Berry lifts. These clauses of the contract are inconsistent, and the contract on its face is ambiguous. The answer of the defendant saves this point because therein, with reference to the Berry type lifts, the

defendant limits itself to admitting the language in the contract and does not admit the interpretation placed upon it by the plaintiff. Before judgment could be entered upon this contract it would require clarification to determine the intention of the parties with reference to the said sum of $5,400. This would necessitate the presentation of evidence before the court.

There is another issue in the case which must be considered. The instant suit, in addition to the matters covered by the first contract, also claimed $1,600 for goods sold and delivered by the plaintiff to the defendant in June of 1955. As to such items no defense has been raised by the defendant. Summary judgment could have been properly entered for $1,600 by the trial court. This disposes of the contention of the defendant that this court should reverse without remanding and enter judgment here for the defendant. Besides, no motion was made by defendant in the trial court for summary judgment.

The judgment of the Circuit Court of Cook county is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Judgment reversed and cause remanded.

SCHWARTZ, P. J. and ROBSON, J., concur.