Minnie F. Lechleiter, Appellant, v. Margaret A. Lechleiter, Appellee.

Gen. No. 9,518.

Opinion filed February 24, 1947.
Released for publication March 24, 1947.

LUTHER DEARBORN, of Lincoln, for appellant.

LYMAN S. MANGAS, of Lincoln, for appellee.

MR. PRESIDING JUSTICE DADY delivered the opinion of the court.

This is an action by plaintiff against defendant to recover on three promissory notes. The case was tried

without a jury. The trial judge found in favor of and entered judgment for the defendant. The plaintiff brings this appeal.

The plaintiff Minnie F. Lechleiter and the defendant Margaret A. Lechleiter are sisters. They married two brothers. Minnie married John B. Lechleiter and Margaret married Charles F. Lechleiter. Charles F. Lechleiter died in December 1940. His estate is being probated in the county (probate) court of Logan county.

During all of the times in question the plaintiff and her husband lived, first, in North Dakota, and later in Minnesota. During all of such times the defendant lived in Illinois. Her husband Charles F. Lechleiter lived in Illinois until his death.

The complaint alleged and the answer of the defendant admitted the execution and delivery by defendant and Charles F. Lechleiter to the plaintiff of the three notes sued on on their respective dates. Each note was payable to the order of the plaintiff one year after its date, and each bore interest until maturity at six per cent per annum. One note was for $500 and dated July 1, 1927. One was for $500 and dated July 20, 1928. One was for $1,000 and dated September 1, 1928.

To anticipate and avoid any defense of the statute of limitations, the complaint alleged certain payments by the defendant.

The only defenses pleaded were: (1), the statute of limitations and that payments, if any, on such three notes were made without the defendant's knowledge or approval, and, (2), that on June 1, 1939, Charles F. Lechleiter, at the request and with the knowledge of the plaintiff, executed and delivered to John B. Lechleiter a promissory note (which for brevity is hereafter referred to as note No. 4) dated June 1, 1939, for $2,000, due one year after its date, in full discharge and payment of the three notes sued on, and that the

defendant was thereby released from liability on such notes.

The plaintiff's reply denied that the statute of limitations had run. The reply admitted the execution and delivery of note No. 4, but denied that the same was received in discharge of the notes sued on and stated that such notes were not discharged or paid by the execution of note No. 4.

Note No. 4 was for $2,000, was dated June 1, 1939, was executed by Charles F. Lechleiter, was payable to the order of John B. Lechleiter one year after its date with interest at seven per cent per annum, and was delivered by Charles F. Lechleiter to John B. Lechleiter sometime in October 1939.

On the back of note No. 4 appears the following indorsements which were made by Charles F. Lechleiter at the time he made out such note: "This is the amount of the following three notes dated

July 1, 1927, $500
July 20, 1928, 500
Sept. 1, 1928, 1000
interest to date
  $1018.72
   .268.72 in paid
-----
$ 750.00 in due."

Although note No. 4 was executed in October 1939, no reason is given why it was dated back to June 1, 1939. That is apparently not material.

The plaintiff has at all times since their execution had possession of the notes sued on. Her husband, John B. Lechleiter, has at all times since its execution had possession of note No. 4.

On November 7, 1942, John B. Lechleiter caused to be filed in the probate court of Logan county his claim in the amount of $3,170 against the estate of Charles F. Lechleiter, deceased, which claim was sworn to by John B. Lechleiter on November 5, 1942, and was based

on and described note No. 4. The claim stated, among other things, ''This note (Note No. 4) made to cover 3 other notes then due and showing by notation on back additional interest due of $750.00.''

Before filing this claim, John B. Lechleiter sent note No. 4 to another brother somewhere in Illinois, to give to an attorney. Such brother took the note to an attorney in Lincoln, Illinois, who prepared and mailed the claim to John B. Lechleiter for his execution. Thereupon John B. Lechleiter, with the knowledge of the plaintiff, signed and mailed such claim to such attorney who filed the same in the probate court. Such attorney was in the military service at the time of the trial and did not testify.

On November 19, 1942, the plaintiff caused to be filed in said probate court her claim in the amount of $3,170 against the estate of Charles F. Lechleiter, deceased, which claim was sworn to by the plaintiff on October 15, 1942, and was based and described on the notes sued on. This claim was prepared and filed by the same attorney.

It does not appear that either of such claims has been allowed or passed upon by the probate court or that either of them has been withdrawn.

The defendant contends that the execution and acceptance of note No. 4 under the facts above stated and under the facts hereinafter stated, accomplished a novation and satisfaction of the notes sued on, and that the filing by John B. Lechleiter of such claim with the knowledge of the plaintiff against the estate of Charles F. Lechleiter is the strongest evidence that there was in fact a substitution and novation by such acceptance of note No. 4.

The trial judge found there was such a novation, and in disposing of the case held that it was not necessary for him to and he did not pass on the issues raised by the plea of the statute of limitations.

The only evidence as to the execution and delivery of note No. 4 is the evidence of the plaintiff, and

John B. Lechleiter, and the defendant. In October 1939, the plaintiff and John B. Lechleiter were visiting for a few days at the home ·of the defendant and Charles F. Lechleiter, and brought with them the notes sued upon.

John B. Lechleiter testified that "What we wanted is to renew the old notes but we never got to it," that one day while so visiting at such home Charles F. Lechleiter "summed up" the interest "amongst the four of us," that note No. 4 "is the note that Charles drew up on the porch when his wife refused to sign it," that the figures and writing on the back of note No. 4 were written by Charles F. Lechleiter, that while "we were on the porch" and while Charles was "writing this note out, Margaret comes out and says, 'What are you doing, making a new note? I'll not sign them if you do,' " and Charles said, "Oh no, this doesn't mean anything," that Charles then said, "I will just give you this. It is marked on the back showing what I owe you at the present time," that Charles then gave him note No. 4 and he and Charles then went to a bank in Lincoln where Charles then obtained and paid him $268.72, that he John B. later paid such $268.72 to the plaintiff, and that she on October 27, 1939, indorsed the same on the note dated September 1, 1928, and that when he and the plaintiff returned to North Dakota a few days later they took the four notes with them.

The plaintiff testified that she first saw note No. 4 while on such visit at the home of the defendant in the latter part of October 1939; that when she saw such note the defendant and John and Charles were present, that she saw Charles making out such note, that at that time the defendant came to the door and said, "Charlie, what are you doing? If you are making out a new note I will never sign it," and Charles said, "I'm only making this out, this doesn't mean anything. I'm only making this out to show John and Minnie what is due them, what I owe them," and that

the defendant then said, "Minnie, if you get your money it is all right. If you never get it it is all right."

The defendant testified that the plaintiff and John were at her home in October 1939, but that she was not present at any conversation between her husband and John and the plaintiff about the payment of $268.72 or about the notes sued on, or about note No. 4, or about any business; that she did not know whether the $268.72 was paid "because we looked and couldn't find no check or nothing," that at that time she had no conversation concerning the note sued on, and that "I don't think I came in any door, I was busy getting dinner. They were out on the porch talking. That's all I know," and that she never knew a thing about note No. 4 until after her husband's death.

Charles F. Lechleiter was a farmer. The occupation of John B. Lechleiter is not shown. From the testimony of the plaintiff, of her husband, and of the defendant, it is apparent that all the parties were inexperienced in business affairs.

██ A novation is the substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished. (46 C. J. p. 573.) Whether a novation has been accomplished or not depends upon the intention of the parties. (46 C. J. p. 606.)

In *Burnett v. West Madison State Bank,* 375 Ill. 402, 410, the court said: "To constitute novation by substitution of debtors, it is essential the creditor shall have consented to the substitution of a new debt and debtor and shall have agreed to release his original debtor and to accept in his stead the new party. Assent of the creditor to the novation may be implied from facts and circumstances attending the transaction or from the subsequent conduct of the creditor,

. . . Novation is never presumed. It is an affirmative defense and must be proved by clear and competent legal evidence."

In *Cheltenham Stone & Gravel Co. v. Gates Iron Works*, 124 Ill. 623, 626, the court said: "In *Tobey v. Barber*, 5 Johns. 68, a note of a third person was given for rent due, and a receipt given for the rent. The note was not paid, the maker having become insolvent before the note became due. The court say: 'The taking of the note was no extinguishment of the debt due for the rent. It is a rule, well settled and repeatedly recognized in this court, that taking a note, either of the debtor or of a third person, for a pre-existing debt, is no payment, unless it be expressly agreed to take the note as payment, and to run the risk of its being paid, or unless the creditor parts with the note, or is guilty of laches in not presenting it for payment in due time.' And it was held that the inference arising from the receipt was not enough to establish such a positive agreement. . . . *McIntyre v. Kennedy*, 29 Pa. St. 448, *Hunter v. Moril*, 98 id. 13, *Brown v. Olmstead*, 50 Cal. 162, are authorities in support of the rule that taking the note of a third person for a pre-existing debt is no payment, unless it be expressly agreed to take the note as payment. The decisions in this State are essentially to the same effect."

In *Darby v. Farmers' State Bank* (Tex. Civ. App.), 253 S. W. 341, 343, the court said: "It will not be presumed that a renewal note was taken as payment of the original note or as a novation; but when, as in this case, the original note is retained by the creditor it should be presumed, in the absence of evidence to the contrary, that the bank held it as a renewal or as collateral. Under such circumstances, the holder may sue upon either the renewal note or the original. A renewal note should never be considered as discharging the old one, in the absence of an express agreement when to do so would mean the loss of the

debt. The mere change in the evidence of the indebtedness does not alone affect the right of the creditor. The issue of novation in such case is a question of fact.''

■ Applying the foregoing rules of law to the facts, it is our opinion that the defense of novation and satisfaction and discharge of the notes sued on was not proven.

■ As stated, the trial court did not pass upon the issues raised by the plea of the statute of limitations. A disposition of such issues as now presented depends at least somewhat upon the credibility of witnesses. This being so, it is our opinion that we cannot properly pass upon such issues until they have been passed upon by the trial court.

The judgment of the trial court is therefore reversed, and the cause is remanded to the trial court for a new trial and for further proceedings consistent with this opinion.

*Reversed and remanded.*