**SECURITY BENEFIT LIFE
INS. CO., Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE
CORP., as Receiver of Life Savings
of America, F.S.B., Defendant.**

No. 91–4023–S.

United States District Court,
D. Kansas.

Oct. 6, 1992.

J. Craig Anderson, Sec. Ben. Group, Inc., Topeka, Kan., Robert A. Knuti, Damon N. Vocke, Lord, Bissell & Brook, Chicago, Ill., for Sec. Ben. Life Ins. Co.

Lawrence D. Greenbaum, Frank D. Menghini, Douglas M. Greenwald, McAnany, Van Cleave & Phillips, P.A., Kansas City, Kan., for F.D.I.C.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on the defendant's motion for summary judgment in this declaratory judgment action filed pursuant to 28 U.S.C. § 2201 by Security Benefit Life Insurance Company ("SBL"), a mutual life insurance company domiciled in Kansas. The defendant, Federal Deposit Insurance Corporation ("FDIC"), is the receiver of Life Savings of America, F.S.B. ("Life Savings"), a federally chartered savings bank located in Illinois. SBL seeks a determination that it is not liable to the defendant on an annuity owned by Life Savings. As the receiver for Life Savings, FDIC counterclaims, seeking a judgment against SBL for the unrecovered balance of the annuity's surrender value.

The annuity was originally purchased by Life Savings in 1982 from First Pyramid

Life Insurance Company ("First Pyramid"). First Pyramid was acquired as a subsidiary by SBL, which subsequently assumed the obligation on the annuity at issue here. SBL later assigned the annuity obligation to Life Assurance Company of Pennsylvania ("LACOP"), which in turn assigned the obligation to Diamond Benefits Life Insurance Company ("Diamond") of Arizona. SBL claims that it is no longer obligated on the annuity because the later transactions with LACOP and Diamond operated to release SBL from liability on the annuity.

## JURISDICTION AND VENUE

The court has subject matter jurisdiction pursuant to 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1331 in that the action is deemed to arise under the laws of the United States. Venue is proper under 28 U.S.C. § 1391(b)(2).

## SUMMARY JUDGMENT GUIDELINES

■ Under Fed.R.Civ.P. 56, the court is compelled to render summary judgment on behalf of a moving party if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

■ The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,*

477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party must go beyond the pleadings and designate specific facts, by affidavits, depositions, answers to interrogatories, and admissions on file, showing that there is a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514.

■ The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). However, a mere scintilla of evidence in favor of the nonmoving party is insufficient to create a genuine issue of material fact. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

## FACTS

For purposes of the present motion, the court finds the following relevant facts to have been established.

Life Savings is a federal savings bank located in Rockford, Illinois. In 1982, Life Savings purchased a single premium deferred annuity ("Life Savings annuity") for $2,500,000 from First Pyramid, naming one of its officers, Jeffrey Hansen, as the annuitant. The annuity policy was among a block of single premium deferred annuities known as ValuBuilder annuities. The maturity date of the Life Savings annuity is December 2, 1992.[1]

---

**1.** The annuity policy issued by First Pyramid    has not been submitted to the court.

As a result of a series of transactions, FDIC now holds all rights to the Life Savings annuity. On February 16, 1984, Jeffrey Hansen assigned all his rights in the annuity to Life Savings. On February 13, 1987, Life Savings was placed in receivership, and the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed sole receiver. FSLIC was the holder and owner of the Life Savings annuity until August 1989 when FDIC succeeded FSLIC as receiver. Since then, FDIC has been the holder and owner of the Life Savings annuity.

By an independent series of transactions, First Pyramid's annuity obligation was assigned to other entities. In 1984, First Pyramid was acquired by SBL as a subsidiary. In 1986, SBL sold First Pyramid. Incident to that transaction SBL assumed liability to all holders of ValuBuilder annuities, including the Life Savings annuity, effective June 1, 1986.[2]

Because the ValuBuilder annuities were not the type of insurance business that SBL was writing or servicing at the time SBL assumed liability for them, SBL sought and obtained a transferee for its obligations. On March 31, 1987, SBL entered into a written "reinsurance assumption agreement" with LACOP, under which SBL paid LACOP to assume its liability for the block of ValuBuilder annuities. The effective date of the agreement was April 1, 1987. Under the agreement LACOP was to issue assumption certificates to the owners of each reinsured policy informing them about LACOP's assumption of the annuity obligations and notifying them that SBL would have no further obligation on the annuity policies. However, the assumption certificates were never mailed to the annuity owners.[3] By this time FSLIC had been appointed receiver for Life Savings. SBL did not send any notice or make any request to FSLIC or its successor FDIC seeking consent to release SBL from

liability; nor did SBL ever receive any written release from either FSLIC or FDIC.

Under a separate written agreement effective April 1, 1987, SBL agreed to continue performing administrative responsibilities associated with the annuities as the agent of LACOP. These services included answering inquiries about the policies and processing ownership changes and surrenders. LACOP agreed to pay SBL certain fees for these services.

On August 12, 1987, a receptionist and clerical employee of FSLIC, then the receiver for Life Savings, initiated a telephone conversation with an employee at SBL regarding the fact that Life Savings was in receivership. The memorandum of the telephone contact, prepared by the SBL employee, indicates that the FSLIC employee inquired as to the original premium amount Life Savings paid for the annuity, and SBL reported that the original premium was $2,500,000. The memorandum also includes a notation that surrender forms were to be sent to FSLIC to the attention of Ray Krey, who at the time was Deputy Director of FSLIC. The SBL employee testified in her deposition that it was standard operating procedure for her to inform ValuBuilder annuitants who requested surrender forms about the fact that LACOP had assumed the obligation on those annuities. It also would have been standard operating procedure to send surrender forms as requested.

Ray Krey's deposition indicates that he never knew that Life Savings had purchased an annuity for $2,500,000 and that he never received surrender forms. Although some inquiries were undertaken to find out the procedure for liquidating the Life Savings annuity, FSLIC never submitted documents to SBL, LACOP, or any other insurance company surrendering the annuity or requesting payment of its cash value.

---

**2.** The 1986 agreement by which SBL assumed liability from First Pyramid has not been submitted to the court.

**3.** The deposition of LACOP's Senior Vice-President for Administration, James Blair, shows that LACOP decided not to mail the assumption certificates out of concern that annuity holders would surrender their policies due to the change, and because plans were already underway for LACOP to transfer the obligations to Diamond.

On August 31, 1987, SBL received a telephone request from LACOP to send the entire Life Savings annuity file. SBL sent a copy of the file by telefacsimile to LACOP as requested.[4]

On December 31, 1987, LACOP executed a written reinsurance agreement with Diamond, under which LACOP ceded 95 percent of its liability on the annuities to Diamond. This agreement was subsequently amended on February 29, 1988. On June 14, 1988, LACOP and Diamond executed a written "reinsurance assumption agreement" under which Diamond assumed full and complete liability for the block of Valu-Builder annuities. Diamond agreed to mail assumption certificates on the effective date of the latter agreement to the owners of each reinsured policy. By this agreement LACOP also assigned to Diamond its rights under LACOP's separate agreement with SBL for administrative services related to the annuities.[5]

On or about June 14, 1988, Diamond mailed a letter and assumption certificate to Jeffrey Hansen, the original annuitant, at an Illinois address. Although the letter was dated June 13, 1988, the assumption certificate was dated December 31, 1987, and gave the effective date of the assumption as December 31, 1987. The certificate referred nominally to SBL as having assumed the annuity policy originally issued by First Pyramid.[6] The assumption certificate also gave the recipient the right to reject "this assumption and remain with Life Assurance Company of Pennsylvania" by notifying either LACOP or Diamond of the desire to remain with LACOP within ten days from the certificate's effective date, shown on the certificate as December 31, 1987.[7] These documents eventually

---

4. SBL contends that this evidence supports a reasonable inference that FSLIC contacted LACOP to request payment under the annuity, thereby refuting FDIC's assertion that FSLIC did not purport to release SBL from liability on the annuity. The court declines to draw the suggested inference. The mere fact that LACOP requested a copy of the file from SBL, its administrative agent, does not support any inference as to the intentions of FSLIC. At most, the request for a copy of the file supports an inference that LACOP had questions about the liability it had assumed for the Life Savings annuity.

5. The evidence indicates that SBL no longer performed administrative services related to the annuities after December 1988.

6. The complete certificate reads as follows:

ASSUMPTION CERTIFICATE
MASTER POLICY NUMBER: GA 201
EFFECTIVE DATE: DECEMBER 31, 1987
This is to certify that your individual single premium deferred annuity policy/certificate originally issued by FIRST PYRAMID LIFE INSURANCE COMPANY and subsequently assumed by SECURITY BENEFIT LIFE INSURANCE COMPANY (SBL) of Topeka, Kansas and LIFE ASSURANCE COMPANY OF PENNSYLVANIA (LACOP) and in force as of December 31, 1987 has been fully assumed as of the above effective date by:
DIAMOND BENEFITS LIFE INSURANCE COMPANY
of Phoenix, Arizona
DIAMOND BENEFITS LIFE INSURANCE COMPANY will carry out the provisions of your annuity contract and perform all the obligations contained therein as fully as

would or should have been performed by LACOP, with all the terms and conditions thereof. LACOP will have no further obligation or liability to you under the terms of your annuity contract.
NOTE: On any page of the policy or certificate where the word "Company" appears, Company is now defined as Diamond Benefits Life Insurance Company.
You have the right to reject this assumption and remain with Life Assurance Company of Pennsylvania by notifying either Life Assurance Company of Pennsylvania or Diamond Benefits Life Insurance Company in writing of your desire to remain with Life Assurance Company of Pennsylvania, within 10 days from the date of the assumption certificate. IN WITNESS WHEREOF, DIAMOND BENEFITS LIFE INSURANCE COMPANY has caused this assumption certificate to be signed by its President to be effective as of the 31st day of December, 1987.

/s/
Colleen Comey, President

PLEASE KEEP THIS CERTIFICATE AS A PART OF YOUR POLICY RECORDS.

7. SBL asserts that other Illinois resident owners of ValuBuilder annuities rejected the Diamond assumption, and LACOP thereafter issued assumption certificates to each of those who rejected Diamond. The other Illinois annuitants who received LACOP assumption certificates were advised by those documents of their right to reject LACOP and remain with SBL. However, the acts of other Illinois policy owners and LACOP's conduct with reference to them are not relevant to the issue of whether FSLIC or FDIC released SBL from liability on the Life Savings

made their way to either FSLIC or FDIC, although the actual date of receipt is unknown.

On August 29, 1988, SBL received a telephone request from Diamond for the Life Savings annuity file, which was copied and mailed to Diamond by SBL on August 31, 1988.[8]

Diamond was declared insolvent in December 1988 by the Arizona insurance regulatory authority, and was placed in receivership. By statute, the Arizona Life and Disability Insurance Guaranty Fund assumed the obligations of Diamond.

On November 6, 1989, Frank Parz, FDIC's liquidation assistant who had the primary responsibility at that time for liquidating Life Savings' assets, initiated a telephone contact with SBL and was advised that the annuity had been sold and that he should contact LACOP. When he contacted LACOP, he was told to contact Diamond. Diamond advised him that it was in receivership, and that there was litigation pending between LACOP and Diamond regarding the effectiveness of their agreement. On November 14, 1989, Parz wrote a letter to Diamond's receiver stating that FDIC had an interest in the annuity as receiver for Life Savings. Parz testified in his deposition that he viewed Diamond as his "starting point" in pursuing FDIC's claim, and believed it prudent to submit written notice of the claim since a receiver had been appointed for Diamond.

On October 10, 1990, FDIC made a written demand upon SBL and LACOP for the surrender value of the annuity. Both SBL and LACOP denied liability in separate letters, relying upon the reinsurance and assumption agreements.[9] In January 1991,

LACOP was placed in receivership in Pennsylvania. After SBL filed this action, Parz wrote letters to LACOP's statutory liquidator and to Diamond's receiver seeking to secure FDIC's claim on the annuity policy.

Although FDIC's predecessors in interest obtained partial withdrawal payments from First Pyramid on the Life Savings annuity, FDIC and its predecessors have not been paid the full withdrawal amount of the annuity.[10]

## NATURE OF THE CLAIM

SBL claims that the defendant and its predecessors in interest manifested an intent to release SBL from liability on the Life Savings annuity, and therefore seeks a judgment declaring that it has no obligation under the annuity. FDIC counterclaims for the withdrawal value of the annuity at the date of judgment, together with an award of attorneys' fees pursuant to K.S.A. 40-256, reasoning that SBL refused payment on the annuity without just cause or excuse.[11] FDIC contends that SBL remains liable on the annuity policy in that none of FDIC's predecessors were parties to the assumption reinsurance agreements with LACOP and Diamond.

SBL contends that FSLIC accepted LACOP as the sole obligor on the annuity, and that FDIC accepted Diamond as sole obligor and released SBL from any liability. FDIC argues that SBL has not established that defendant or its predecessors consented to a release of SBL's liability on the annuity, and hence SBL remains jointly and severally liable notwithstanding the assignment of its obligation on the annuity to LACOP and LACOP's assignment of the obligation to Diamond. In its motion for

annuity, or whether FSLIC had any contemporaneous knowledge of the fact that LACOP had fully assumed the obligations of SBL as to the Life Savings annuity.

8. SBL contends that this fact supports an inference that FSLIC contacted Diamond and requested payment on the annuity. The court declines to draw such an inference. See *supra* note 4.

9. SBL asserts that it did not receive FDIC's demand letter until January 16, 1991. Its re-

sponse denying liability was dated February 7, 1991. On February 11, 1991, SBL filed this declaratory judgment action against FDIC.

10. As of September 30, 1991, the value of the annuity was estimated by SBL to be $4,127,-379.82.

11. In its motion for summary judgment, FDIC seeks only a determination of the issue of SBL's liability on the annuity. Consequently, the issue of FDIC's entitlement to attorneys' fees remains unresolved.

summary judgment, FDIC contends that SBL's complaint fails as a matter of law for lack of a novation. Since the holder of the annuity never agreed to substitute LA-COP or Diamond as sole obligors on the annuity, FDIC contends that SBL remains liable for the obligation.

The essential issue before the court is whether the evidence, construed in the light most favorable to SBL as the party opposing summary judgment, poses a genuine factual issue as to whether SBL was absolved of all liability on the Life Savings annuity policy.

## CHOICE OF LAW

■ At the outset, the court must determine the applicable law for resolving whether SBL's obligation on the annuity was discharged. Restatement (Second) of Conflict of Laws § 212(1) (1969) provides:

(1) A contract is discharged without performance by an act of one or both of the parties if the act would have such an effect under the local law *of the state which, with respect to that issue, has the most significant relationship* to the transaction and the parties. (Emphasis added.)

In comment b, the Restatement indicates that frequently the state whose local law governs the issue of discharge will be the same as the state whose local law would be applied to determine other issues relating to the contract.

In this instance, the relevant contract is the annuity policy originally issued by First Pyramid to Jeffrey Hansen.[12] Life Savings, the purchaser of the annuity, was located in Illinois and the annuitant, Jeffrey Hansen, was an officer of Life Savings at the time of its purchase. SBL alleges that First Pyramid was an Arkansas company, an assertion that has not

been disputed by FDIC. The court finds that the state with the most significant relationship to the annuity policy was Illinois, where the owner of the annuity was located and where the original annuitant had business contacts and apparently resided at the time the annuity policy was issued. *See generally* E. Scoles & P. Hay, Conflict of Laws § 18.26, at 675–76 (1982) (choice of law rules for insurance contracts).

However, with respect to the issue of *discharge*, the court finds that the state with the most significant relationship to the transaction and parties in question is Kansas, where SBL, the purported obligor, has its primary place of business. FSLIC and FDIC, both federally chartered corporations, were the successors in interest to the annuity policy, and SBL's assignment of its obligation to LACOP, and LACOP's assignment to Diamond, each occurred after the date when Life Savings was placed in receivership. Thus the acts and conduct SBL relies upon in arguing that its obligation was discharged were not those of Life Savings and had no significant relationship with Illinois. On the other hand, the issue of discharge has a significant relation to Kansas because the purported obligor has its principal place of business in Kansas. In addition, although LACOP was a Pennsylvania company and Diamond an Arizona company, SBL's administrative services to annuity owners as the agent of LACOP and later Diamond were conducted from its offices in Topeka, Kansas.

Having researched the applicable law of both Illinois and Kansas, the court concludes that there is no significant difference between the relevant law of the two states. The court may therefore properly rely on the law of either or both states to determine the issue of whether SBL was discharged from liability on the annuity.

12. The court notes that the "reinsurance assumption agreements" executed by SBL, LACOP, and Diamond included choice-of-law provisions for the application and interpretation of the respective agreements. The SBL–LACOP agreement provided that Kansas law would apply, while the LACOP–Diamond agreement specified that Pennsylvania law would apply. While those provisions would be effective to govern

the relationships between the parties to those respective agreements, none of the owners of the Life Savings annuity was a party to those agreements. The annuity policy has not been submitted to this court, and consequently it cannot be determined whether the annuity policy itself, upon which FDIC's counterclaim is of course based, included a choice-of-law provision.

## ANALYSIS

■ Under the common law of contracts, an obligor may generally delegate performance of his contractual duty to another. However, neither the fact that the obligor delegates performance of a contract, nor that fact that a person contracts with the obligor to assume the duty, will discharge any duty or liability of the original obligor, unless the obligee agrees otherwise. Restatement (Second) of Contracts § 318(1), (3) (1979).

■ An obligor is discharged by substitution of a new obligor only if the contract so provides or if the obligee makes a binding manifestation of assent to the substitution, forming a novation. Otherwise, the obligee retains his original right against the obligor, even if the obligor intends to substitute another obligor in its place and the new obligor purports to assume the duty. The obligee may have rights against the other obligor, however, as an intended beneficiary of the promise to assume the duty. Restatement (Second) of Contracts § 318 cmt. d; see also In re International Harvester's Disposition of Wisconsin Steel, 681 F.Supp. 512, 523 (N.D.Ill.1988) (citing with approval Restatement (Second) of Contracts § 318).

■ A novation is simply a substituted contract that includes as a party one who was neither the obligor nor the obligee of the original duty. Restatement of Contracts (Second) § 280 (1979).

[A simple novation involving a substitution of obligors] results when a third person promises an obligor to assume, immediately and in substitution for the obligor's duty, a duty to the obligee to render the performance that was due from the obligor or some other performance, and the obligee agrees with the obligor or with the third person to that substitution. The third person then comes under a new duty to the obligee, who is an intended beneficiary of his promise to assume (§ 302), and this is consideration for the obligee's agreement to discharge the original obligor. .... However, a mere promise by a third party to assume the obligor's duty, not offered in substitution for that duty, does not result in a novation, and the new duty that the third party may owe to the obligee as an intended beneficiary is in addition to and not in substitution for the obligor's original duty. For a novation to take place, the obligee must assent to the discharge of the obligor's duty in consideration for the promise of the third party to undertake that duty.

Restatement of Contracts (Second) § 280 cmt. d (1979).

The relevant law of both Illinois and Kansas is in accord with the common law. See Burnett v. West Madison State Bank, 375 Ill. 402, 31 N.E.2d 776, 780 (1940) (facts alleged were consistent with idea that depositor looked to both the original bank and successor bank for payment; in absence of clear proof of novation, successor bank was additional debtor); Phillips and Arnold, Inc. v. Frederick J. Borgsmiller, Inc., 123 Ill.App.3d 95, 78 Ill.Dec. 805, 810, 462 N.E.2d 924, 929 (1984) (in the absence of clear proof of novation, third person's assumption of debt makes third person merely an additional debtor); Lechleiter v. Lechleiter, 330 Ill.App. 517, 71 N.E.2d 845, 847–48 (1947) (if original note is retained by creditor despite execution of renewal note, creditor may sue on either the renewal note or the original); Davenport v. Dickson, 211 Kan. 306, 507 P.2d 301, 306 (1973) (even if assignee undertakes to perform assignor's duties, assignor remains bound by those duties so long as his creditor does not accept assignee's new promise in lieu of duty of assignor; such assumption merely gives the creditor an additional security; citing Corbin on Contracts); State ex rel. v. Bank Sav. Life Ins. Co., 147 Kan. 170, 75 P.2d 297, 301 (1938) (insured need not dissent from terms of reinsurance contract in order to recover from the insurer's receiver on the original insurance contract); cf. Elliott v. Whitney, 215 Kan. 256, 524 P.2d 699, 703 (1974) (old contract obligation extinguished by novation; if new agreement constitutes novation, breach of new agreement will not revive the discharged claim and parties' rights are controlled by new agreement).

SBL transferred its obligation on the Life Savings annuity to LACOP under an agreement titled "Assumption Reinsurance Agreement." However, LACOP did not technically agree to "reinsure" the Life Savings annuity as that term is defined in the insurance law context. In a true reinsurance agreement, one insurance company (the insurer or reinsured) cedes to another (the reinsurer) all or a portion of the insurer's risks along with a stipulated portion of the premium. The liability of the reinsurer is solely to the reinsured, the ceding company, to indemnify it for a designated portion of the loss it may incur, and the ceding company retains all contact with the original insured. 13A Appleman, Insurance Law and Practice § 7681, at 480–81 (1976) (hereinafter "Appleman"). The original insured is not notified of the reinsurance, has no contact with the reinsurer, and is generally not a party to the contract and has no legal interest in the reinsurance agreement. *Id.* at 481; *see Ainsworth v. General Reinsurance Corp.*, 751 F.2d 962, 965 (8th Cir.1985); *Reid v. Ruffin*, 314 Pa.Super. 46, 460 A.2d 757, 759–60, *aff'd*, 503 Pa. 458, 469 A.2d 1030 (1983).

In contrast, when the second insurance company assumes direct liability to the original insured, the insurance risk or obligation is simply transferred to the second insurer, which is substituted for the original insurer. Appleman § 7741, at 596; *see also* 19 Couch on Insurance 2d § 80:70, at 678–79 (Rev. ed. 1983). Such a transaction is more accurately characterized as "substituted insurance" or an "assumption agreement" rather than the more generic term "reinsurance." Appleman § 7741, at 596–97; *see State Dep't of Public Welfare v. Central Standard Life Ins. Co.*, 19 Wis.2d 426, 120 N.W.2d 687 (1963) (distinguishing "assumption agreement" from "reinsurance agreement"), *cited in* Appleman § 7741, at 597 n. 2, 601 n. 12.05; *see also Hobbs v. Occidental Life Ins. Co.*, 87 F.2d 380, 384–85 (10th Cir. [Kan.] 1937) (effect of reinsurance agreement was that policy holders acquired new insurance protection; novation was effected by which reinsurer was substituted for the original insurer in point of liability, with certain changes that were made with consent of policy holders). However,

"[r]egardless of the nature of the reinsurance contract, the original insurer remains liable to the original insured, in the absence of a novation; that is, an original insurer cannot, without the knowledge or consent of the insured, enter into any contract of reinsurance with another company which abrogates or alters the rights of the insured as against it, the insurer."

19 Couch on Insurance 2d § 80:64, at 670 (Rev. ed. 1983).

An insurer may not transfer its liability to another company and compel its policyholders to accept the new company as their insurer. *State Dep't of Public Welfare*, 120 N.W.2d at 692; Appleman § 7756, at 653; *see also id.* § 7745, at 623 (insurer has no power to substitute another insurer in carrying out its undertakings against consent of insured). When another insurance company assumes the insurer's obligations, the original insurer is not relieved of its liability to the insured without the consent of the insured to substitute another insurer. Appleman § 7755, at 652. The policyholder may elect whether to repudiate or accept the reinsurance agreement. Appleman § 7756, at 653. Although an assumption agreement is not binding on a policyholder, once he has accepted it he is bound by its terms. Appleman § 7756, at 655. He cannot accept those portions that are advantageous while rejecting the remainder, but must accept or repudiate the agreement in its entirety. Appleman § 7758.

In this case, the court finds as a matter of law that the agreement executed by SBL and LACOP was a "substituted insurance" or "assumption" agreement, which required the consent of the policyholders. Under the contract, LACOP purported to assume in full the obligations of SBL to owners of the ValuBuilder annuity policies, and LACOP agreed to notify policyholders by mailing assumption certificates. The "Reinsurance Assumption Agreement" was not just for the benefit of

SBL and LACOP in sharing the risks and premiums associated with the annuity policies, but also for the benefit of the annuity policyholders, who were third party beneficiaries of the agreement. The fact that LACOP agreed to mail assumption certificates is indicative of the intent of SBL and LACOP to substitute LACOP as the obligor. The assumption agreement was not effective as to Life Savings' successors in interest absent proof that at least one of them consented to the substitution. Unless SBL can establish that FSLIC or FDIC agreed to the substitution of LACOP, the agreement between SBL and LACOP cannot be construed as relieving SBL from its obligation on the Life Savings annuity.

■■ The general contract law of Kansas is in accord. In terms of contract law, SBL is not released from its obligation on the Life Savings annuity unless FSLIC assented to the substitution of LACOP. "[T]here is no acceptance of one person as a substituted debtor where there is no release of the other.... [B]oth must concur to effect a novation, which is the substitution of a new debtor in the place of an old one with intent to release the latter." *Anglo–American Land Mortgage and Agency Co. v. Lombard*, 132 F. 721, 745 (8th Cir. [Kan.]), *cert. denied*, 196 U.S. 638, 25 S.Ct. 793, 49 L.Ed. 630 (1904); *see also Davenport v. Dickson*, 211 Kan. 306, 507 P.2d 301, 305 (1973) (citations omitted). An essential element of a novation is a release of all claim of liability against the original debtor, since it is possible for a creditor to accept a new debtor as an additional debtor and to hold the original debtor still liable. *Id.*

■■ A novation is never presumed, and the party asserting it has the burden of proving its essential elements. *Id.*

The controlling element with respect to the existence of a novation is the intention of the parties, and unless there is a *clear and definite intention* on the part of all concerned to extinguish the old obligation by substituting the new one therefor, a novation is not effected. The mere fact that a creditor, with knowledge of the assumption by a third party

of his debtor's obligation, consents thereto, does not amount to a novation releasing his original debtor or extinguishing the original debt.

*Id.* (emphasis added) (citations omitted); *see Burnett v. West Madison State Bank*, 31 N.E.2d at 780 (novation must be proved by "clear and competent legal evidence"); *see also Meredith v. Rockwell Internat'l Corp.*, 826 F.2d 463, 466 (6th Cir.1987) (novation requires "clear and definite evidence" of knowledge and consent under Ohio law); Annot., Creditor's Acceptance of Obligation of Third Person as Constituting Novation, 61 A.L.R.2d 755, 767 (1958) (intention to effect novation must be clearly shown) (collecting cases).

■■ Mere acceptance by the creditor of a note of a third party who becomes obligated to pay the debt of the original debtor is not by itself evidence of an agreement to discharge the debtor from his obligation. "There must be an agreement expressed or implied to do so." *Davenport v. Dickson*, 507 P.2d at 306; *see Burnett*, 31 N.E.2d at 780; Annot., 61 A.L.R.2d at 761–62 (mere acceptance of third person's obligation without agreement or intention to release the original debtor is not sufficient).

■■ An intention to release the original debtor may be established by implication from circumstantial evidence, such as the facts and circumstances attending the transaction or the subsequent conduct of the creditor. *Burnett*, 31 N.E.2d at 780; *Elliott v. Whitney*, 215 Kan. 256, 524 P.2d 699, 703 (1974); *Badders v. Checker Cab and Baggage Co.*, 118 Kan. 125, 234 P. 41, 42 (1925). However, for a subsequent contract to constitute a novation and a discharge of a prior obligation by implied intention, it must ordinarily appear that the new contract is so radically different from the old one that it necessarily supersedes it in its entirety. *Elliott v. Whitney*, 215 Kan. 256, 524 P.2d 699, Syl. ¶ 6 (1974). The fact that a creditor has knowledge of the assumption of his debtor's obligation by a third person does not necessarily establish implied assent, and mere acquiescence to an assumption is not an assent to a novation. *Phillips and Arnold, Inc. v. Freder-*

*ick J. Borgsmiller, Inc.,* 123 Ill.App.3d 95, 78 Ill.Dec. 805, 810, 462 N.E.2d 924, 929 (1984) (citing Corbin on Contracts and *Walker v. Wood,* 170 Ill. 463, 48 N.E. 919 (1897)).

In this case, SBL admits that neither Jeffrey Hansen, Life Savings, FSLIC, or FDIC ever entered into any express agreement to discharge SBL's obligation on the annuity. Nevertheless, SBL contends that the acts of the agents of FSLIC and FDIC in light of the facts and circumstances amounted to acceptance of LACOP and Diamond respectively as sole obligors, and consequently released SBL's obligation on the Life Savings annuity. Essentially, SBL contends that FDIC or its predecessor in interest, FSLIC, implicitly entered into a novation, thereby discharging the obligation of SBL.[13]

■ If the intention of the parties to a transaction claimed to effect a novation is expressed in writing, the intention of the parties is a question of law for the court to decide. *Davenport v. Dickson,* 507 P.2d at 307. Otherwise, the existence of such agreement and the intention of the parties generally depends on oral testimony, and the existence of a novation is normally a question for the jury. *Id.* (citations omitted); *see also W–V Enterprises, Inc. v. Federal Sav. and Loan Ins. Corp.,* 234 Kan. 354, 673 P.2d 1112, 1119 (1983) (written instrument purported to be a novation is a question of law for the court, but oral agreement changing prior written agreement is a question of fact) (citations omitted).

However, after the close of discovery on a motion for summary judgment, if the evidence supporting a novation by implied agreement is insufficient to create a genuine issue of material fact for the jury, the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *American Acceptance Corp. v. Scott Housing Systems, Inc.,* 630 F.Supp. 70, 75 (E.D.Pa. 1985) (although novation issue is normally a question of fact, where the party seeking to establish novation cannot produce evidence of mutual assent, no question of fact exists and the transaction does not constitute a novation as a matter of law).

■ The court finds that SBL has not shown the existence of any genuine issue of material fact. Construed in the light most favorable to SBL, the evidence submitted to the court at best supports an inference that FSLIC learned in August, 1987, that SBL had transferred its obligation on the Life Savings annuity to LACOP. There is absolutely no evidence to support an inference that FSLIC agreed to substitute LACOP as the obligor in lieu of SBL, whether expressly or impliedly. Mere notice to FSLIC does not amount to assent or agreement to release SBL from liability. It is uncontested that the assumption certificates that were to be mailed by LACOP were never sent to the annuity policyholders. Without notice of LACOP's assumption of SBL's obligation, FSLIC could not have agreed to accept LACOP in substitution for SBL. Even assuming that FSLIC eventually received notice of the assumption agreement and acquiesced by failing to take affirmative action to reject it, this is not enough under Kansas or Illinois law to effect a novation, releasing SBL from liability.

■ SBL argues that the assumption certificate mailed by Diamond and eventually received by FDIC provided notice that SBL was released from its obligation. However, the Diamond assumption certificate did not state that SBL was released from its obligation by the assumption agreement between LACOP and Diamond;

---

13. Although the parties do not raise the issue, some jurisdictions require the necessary consent to be contemporaneous with the transaction asserted to constitute a novation. *See Fay Corp. v. Bat Holdings I, Inc.,* 646 F.Supp. 946, 951–52 & nn. 11–13 (W.D.Wash.1986), *aff'd sub nom. Fay Corp. v. Fredericks & Nelson Seattle, Inc.,* 896 F.2d 1227 (9th Cir.1990); Annot., 61 A.L.R.2d at

771. In this case, FSLIC could not have contemporaneously consented to the substitution of LACOP for SBL because it was notified of the LACOP assumption no sooner than August 1987, more than four months after the effective date of the assumption agreement between SBL and LACOP.

nor did it even indicate that SBL had transferred its obligation in full to LACOP. At best, the certificate put FDIC on inquiry notice that SBL had transferred its obligation to LACOP, and that LACOP had transferred its obligation in turn to Diamond. That FDIC took no affirmative action following the Diamond notice does not imply that FDIC consented to the SBL–LACOP agreement or agreed to release SBL from liability.

Finally, SBL contends that FDIC's letters to Diamond's receiver, to LACOP, and later to LACOP's receiver support an inference that FSLIC or FDIC released SBL from liability. The court is not persuaded. The acts of FDIC's liquidation agent merely reflect an attempt to protect the rights of FDIC by notifying each of the obligors of its interest in the annuity. The court cannot conclude that the actions of FDIC's agent to reserve its rights to claim the value of the policy amounted to an implied agreement to release SBL from liability. *Cf.* 19 Couch on Insurance 2d § 80:31, at 645 (Rev. ed. 1983) (reinsurance does not amount to novation releasing original insurer notwithstanding that the insured signifies acceptance of the reinsurance contract by commencing an action against the reinsurer). Instead, the actions of FDIC are consistent with an intent to hold LACOP and Diamond as additional obligors on the annuity policy. *See generally* Restatement (Second) of Contracts § 310(1) (1979) (intended beneficiary can obtain judgment against either the promisee or the promisor or both); *id.* § 310 cmt. a (claim of intended beneficiary against promisee is not discharged by promisor's agreement to assume the promisee's obligation, unless beneficiary consents to a novation); *id.* § 318 cmt. d; Appleman § 7755, at 652.

SBL has pointed to no action by the defendant or its predecessors in interest that can fairly be characterized as evidence of a clear and definite intent to release SBL from liability on the annuity policy.

IT IS BY THE COURT THEREFORE ORDERED that the defendant's motion for summary judgment (Doc. 45) is hereby granted on its counterclaim against plaintiff for the withdrawal value of the annuity policy.

IT IS FURTHER ORDERED that FDIC is directed to prepare and submit to the court a journal entry to enable the court to enter judgment for the appropriate dollar amount.