Willard O. VETTER, as Trustee for Vetter Stone Employees Savings and Retirement Plan and Vetter Stone Co., Money Purchase Pension, et al., Respondents,

v.

SECURITY CONTINENTAL INSURANCE COMPANY, a Delaware life insurance company (f/k/a Inter–American Insurance Company of Delaware), et al., Appellants.

No. C6–96–843.

Court of Appeals of Minnesota.

Oct. 22, 1996.

Review Granted Jan. 29, 1997.

Gary J. Haugen, Jonathan S. Parritz, Maslon Edelman Borman & Brand, P.L.L.P., Minneapolis, for Respondents.

Edward M. Laine, Oppenheimer Wolff & Donnelly, Minneapolis, Russell M. Pelton, Chicago, IL, for Appellants.

Considered and decided by PETERSON, P.J., and WILLIS and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.*

Appellant insurance company challenges the district court's award of partial summary

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

judgment holding it contractually liable to plaintiffs. We affirm in part, reverse in part, and remand.

## FACTS

During a two-and-a-half year period in the 1980s, the plaintiffs in this action (the employees) purchased, through a multiple employer trust, group insurance contracts issued by Inter–American Delaware (IA–Delaware). In 1987, IA–Delaware transferred the contracts to Inter–American Illinois (IA–Illinois), its wholly-owned subsidiary. After the transfer, IA–Delaware lay dormant, although it still possessed licenses to write insurance contracts in numerous states. In 1991, after another company purchased its stock (for the licenses), IA–Delaware changed its name to Security Continental Insurance Company (SCIC). IA–Illinois became insolvent and, in December 1991, was placed into statutory liquidation by the State of Illinois Department of Insurance.

In 1994, the employees commenced this lawsuit seeking to enforce against SCIC their contract rights under the insurance policies. The district court granted the employees' motion for partial summary judgment, holding SCIC liable on the contracts. The court awarded the employees over $1.9 million in damages, along with allowable costs and disbursements, provided that at the time of payment, they and Minnesota's insurance guarantee association assign to SCIC any rights they have against the estate of IA–Illinois arising out of the contracts at issue here.

The district court denied SCIC's subsequent motion to amend the judgment, and this appeal from the final judgment followed.

## ISSUE

Did the district court err in granting partial summary judgment on the liability issue and in its award of money damages?

## ANALYSIS

Appellant SCIC claims that the district court made numerous errors in granting partial summary judgment in favor of the employees, including: (1) applying Minnesota law rather than Illinois law; (2) failing to conclude that the employees' assent to IA–Illinois's assumption of IA–Delaware's assets and liabilities (the "treaty"), along with their subsequent conduct as to the administration of the contracts, creates a material issue of fact as to whether they consented to the novation; (3) failing to conclude that Minnesota's guaranty association lacked standing to pursue subrogation rights; (4) not giving SCIC the opportunity to conduct further discovery; and (5) denying SCIC the right to receive an immediate assignment of any claims against the estate of IA–Illinois arising out of the employees' contracts.

On appeal from summary judgment, this court must determine whether any genuine issues of material fact exist and whether the district court properly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The evidence must be viewed in the light most favorable to the non-moving party. *Id.*

### 1. Choice of Law

SCIC maintains that the district court erred in applying Minnesota law rather than Illinois law in determining its liability on the employees' contracts. We agree.

The contracts here have "choice-of-law" provisions. Generally, Minnesota courts honor such provisions. The Minnesota Supreme Court has stated that it "is 'committed to the rule' that parties may agree that the law of another state shall govern their agreement." *Milliken & Co. v. Eagle Packaging Co.*, 295 N.W.2d 377, 380 n. 1 (Minn.1980) (quoting *Combined Ins. Co. of Am. v. Bode*, 247 Minn. 458, 464, 77 N.W.2d 533, 536 (1956)). The provisions' meaning in the instant case is a question of law subject to de novo review. *See Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn.1994) (insurance contract interpretation and construction are questions of law, subject to de novo review).

The provision at issue here states: "This Contract is issued in, and shall be subject to the laws of the state in which the Contract is delivered." The obvious question is: Where were the contracts delivered? The Employ-

er's Affiliated Trust of Illinois Agreement, which was expressly incorporated into the contracts by reference,[1] provides the answer: Illinois.

Several aspects of the agreement lead us to this conclusion. First, the agreement appoints Ford City Bank of Chicago, Illinois, as trustee. It then confers upon the trust's administrator the duty to apply for policies, designate the trustee as policyholder, and deliver the policies to the trustee for safekeeping. Notably, the "Situs of Trust" provision states:

> This Trust is accepted by the Trustee in the State of Illinois and all questions pertaining to its validity, construction and administration shall be determined in accordance with the laws of such state.

The trustee here stood as the original legal owner of the insurance contracts. It is domiciled in Illinois, and IA–Delaware delivered the original insurance contracts to the trustee in Illinois. Thus, the district court erred in applying Minnesota law in adjudicating the employees' claims.

### 2. Fact Question

■ By summary judgment, the district court imposed liability on SCIC based on contractual obligations with the employees. It held that under Minnesota law, SCIC had failed to effectuate a novation to substitute IA–Illinois for its predecessor (IA–Delaware). SCIC contends that, viewing the evidence in the light most favorable to it, a reasonable person could have found that a novation had occurred and, accordingly, that the district court erred in granting summary judgment in favor of the employees. Again, we agree.

■ Illinois courts have held that a novation occurs when a creditor agrees to substitute one debtor for another, thereby replacing the old obligation with a new and enforceable agreement. *Printing Mach. Maintenance v. Carton Prods.*, 15 Ill.App.2d 543, 147 N.E.2d 443, 448 (1957). The par-

ties' intent will determine whether a novation has been accomplished. *Lechleiter v. Lechleiter*, 330 Ill.App. 517, 71 N.E.2d 845, 848 (1947). Ultimately, the trier of fact is to determine, after reviewing all underlying circumstances, "whether the creditor has impliedly assented to the discharge of the original debtor." *Phillips & Arnold, Inc. v. Frederick J. Borgsmiller, Inc.*, 123 Ill. App.3d 95, 78 Ill.Dec. 805, 810, 462 N.E.2d 924, 929 (1984).

There are several things that lead us to conclude that there is a fact question here as to whether a novation occurred. Most notably, pursuant to the "treaty" that took effect in December 1987, IA–Illinois mailed the contractholders written notice advising them of its assumption of IA–Delaware's assets and liabilities, as well as their opportunity to object; however, none objected or otherwise sought performance from IA–Delaware until after IA–Illinois's insolvency.

In an attempt to downplay this, the employees rely heavily on *Security Benefit Life Ins. v. Federal Deposit Ins.*, 804 F.Supp. 217 (D.Kan.1992), which provides:

> Even assuming that [the obligee] eventually received notice of the assumption agreement and acquiesced by failing to take affirmative action to reject it, this is not enough under * * * Illinois law to effect a novation, releasing [the obligor] from liability.

*Id.* at 228. Under this case, if the only evidence of a possible novation were the employees' failure to object, the facts here would be insufficient to effect a novation. But here, there are additional facts suggesting a novation. For example, following the assumption, through the trust, the employees submitted claims to IA–Illinois, accepted benefits from IA–Illinois, and in responding to IA–Illinois's insolvency, all but one of the employees initially proceeded against IA–Illinois.

■ The employees also claim that Illinois statutory law, Ill.Ann.Stat. ch. 215, para.

---

1. Each individual contract states that "[t]his Contract, the Application of the Contractholder, and each Supplemental Application, copies of which are attached hereto and made a part hereof, shall constitute the entire Contract between the parties." Attached to the contracts are Joinder Agreements to the Employers' Affiliated Trust. Thus, by reference, the trust agreement was incorporated into the individual contracts.

5/176 (Smith–Hurd 1993), supports their position. That statute provides:

> Whenever a company agrees to assume and carry out directly with the policyholder any of the policy obligations of the ceding company under a reinsurance agreement, any claim existing or action or proceeding pending arising out of such policy, by or against the ceding company with respect to such obligations may be prosecuted to judgment as if such reinsurance agreement had not been made, or the assuming company may be substituted in place of the ceding company.

*Id.* The employees contend that this statute prevents the treaty from resulting in a novation because they each had a "claim existing" against IA–Delaware when the treaty took effect. If, as the employees contend, the phrase "any claim existing" includes the insureds' rights to enforce their insurance contracts as against the ceding insurer, the statute would universally preclude novations pursuant to assumption agreements. This reading is beyond the scope of reason, especially given the treaty's approval by the Illinois Department of Insurance. Thus, just as the common law fails to support the district court's grant of summary judgment, so does statutory law.

### 3. Standing

■ Because of IA–Illinois's insolvency, certain guaranty associations, including the Minnesota Life and Health Insurance Guaranty Association (MGA), became responsible for statutory obligations enacted to protect insureds from losses resulting from insurance company insolvency.

In response to IA–Illinois's insolvency, MGA advanced funds to or on behalf of the employees after it resolved a dispute as to the coverage of the Minnesota life and health insurance guaranty association act (the MGA Act), Minn.Stat. § 61B.01–.16 (1992). By a series of loan receipt agreements, the employees agreed to repay MGA any amount recovered in this action. The district court effectively held that MGA had standing to prosecute the employees' breach of contract claims. The SCIC contests this conclusion.

The district court concluded that MGA had a statutory obligation under the MGA Act to provide benefits to the employees. The operative statutory provision that defines the scope of the MGA Act requires coverage only for policies and contracts "issued by persons authorized at any time to transact insurance or business * * * in this state." Minn.Stat. § 61B.02, subd. 1. SCIC contends that neither IA–Delaware nor IA–Illinois was ever licensed to sell insurance in Minnesota, and therefore, because MGA acted as a volunteer in providing benefits to the employees, it is not entitled to legal subrogation.

■ The problem with this argument is that it overlooks the fact that the MGA Act expressly obligates MGA for policies issued by persons authorized *at any time* to transact business in this state. IA–Illinois, under another name, was once licensed in Minnesota, although that license lapsed prior to issuance of the employees' policies. MGA initially took the position that to be covered under section 61B.02, the policy must have been issued during the time the issuer was licensed, but eventually agreed to settle this dispute and to extend benefits in connection with the IA-contracts. In such a case, where "the liability is not clear and the insurance company acts in good faith to pay the loss," even if the loss is subsequently determined to be outside of coverage, that "does not necessarily make the insurance company a volunteer." *Northland Ins. v. Ace Doran Hauling & Rigging Co.*, 415 N.W.2d 33, 39 (Minn.App.1987) (emphasis omitted); *see also American Nat'l Bank & Trust Co. v. Weyerhaeuser Co.*, 692 F.2d 455, 463 (7th Cir.1982) ("[O]ne can be subrogated to the rights of another even if the debt in question is not paid pursuant to an unconditional or fully choate requirement of law * * *; rather, the potential for legal liability * * * can, in many cases, supply sufficient compulsion to support subrogation.") (emphasis omitted).

MGA's right to pursue SCIC arose by operation of law when, in good faith, it made benefit payments on the employees' behalf. The fact that some of the policyholders had surrendered their contracts is of no import. Until SCIC pays the judgment in this case,

plaintiffs' claims against it will remain unsatisfied.

Because our decision requires reversal of the partial summary judgment, we need not address the other issues raised.

## DECISION

The district court erred in applying Minnesota law, rather than Illinois law, on the liability issue and in concluding that there was no material fact issue as to a novation. It did not, however, err in concluding, effectively, that MGA had standing to pursue the claims of the employees.

**Affirmed in part, reversed in part, and remanded.**